1  TINA WOLFSON, SBN 174806
   twolfson@ahdootwolfson.com
2  ROBERT AHDOOT, SBN 172098
   rahdoot@ahdootwolfson.com
3  THEODORE W. MAYA, SBN 223242
   tmaya@ahdootwolfson.com
4  BRADLEY K. KING, SBN 274399
   bking@ahdootwolfson.com
5
   **AHDOOT & WOLFSON, P.C.**
6  10850 Wilshire Boulevard, Suite 370
   Los Angeles, California 90024
7  Tel: 310-474-9111; Fax: 310-474-8585
8
   Counsel for Plaintiff
9  RICHARD W. TRAMMELL

10

11                **UNITED STATES DISTRICT COURT**

12                **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15  RICHARD W. TRAMMELL, individually and on      Case No. 12-CV-02664-CRB
    behalf of all others similarly situated,
16                                                 **SECOND AMENDED CLASS ACTION
                                                   COMPLAINT**
17                  Plaintiffs,
                                                   JURY TRIAL DEMANDED
18                  v.

19  BARBARA'S BAKERY, INC. a California
    corporation; and DOES 1-50,
20
                    Defendants
21

22

23

24

25

26

27

28

Plaintiff Richard W. Trammell, by and through his counsel, brings this Class Action Complaint against Barbara's Bakery, Inc., on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      In recent years, consumers have become more willing to pay a premium for food and beverages that they perceive to be healthy, organic, natural and non-genetically modified.  As a result, the market for natural or organic foods and beverages has grown rapidly, yielding billions of dollars in revenue for food and beverage manufacturers.

2.      Barbara's Bakery, Inc. ("Barbara's" or "Defendant") is a wholly owned subsidiary of Weetabix North America, which is the North American arm of Weetabix Food Company, a United Kingdom-based company and worldwide cereal conglomerate.  In March 2012, 60% of the Weetabix Food Company was sold to "Bright Food," a firm from Shanghai, China for £1.2 Billion British pounds (approximately $1.9 Billion).

3.      Barbara's has been striving to "raise its profile in the $31 billion U.S. market for health food."  (http://www.barbarasbakery.com/news/barbaras-bakery-rebranding-turns-to-petaluma-legacy/ (last visited on May 21, 2012)).

4.      Defendant manufactures, markets and sells various cereal, multigrain cereal, and snack foods nationwide from its manufacturing plant in Petaluma, California, including but not limited to (1) Original Puffins Cereal, (2) Multigrain Puffins Cereal, (3) Peanut Butter Puffins Cereal, (4) Cinnamon Puffins Cereal, (5) Peanut Butter and Chocolate Puffins Cereal; (6) Crunchy Cocoa Puffins Cereal, (7) Fruit Medley Puffins Cereal, (8) Multigrain Cereal Bar Apple Cinnamon, (9) Multigrain Cereal Bar Blueberry, (10) Multigrain Cereal Bar Cherry, (11) Multigrain Cereal Bar Raspberry, (12) Multigrain Cereal Bar Strawberry, (13) Multigrain Cereal Bar Original, (14) Multigrain Cereal Bar Triple Berry, (15) Cheese Puffs Original, (16) Cheese Puffs Bakes Original, (17) Cheese Puffs Bakes White Cheddar, (18) Cheese Puffs Jalapeño, (19) Shredded Minis Blueberry Burst, (20) Shredded Spoonfulls Multigrain, (21) High Fiber Original, (22) High Fiber Cranberry, (23) High Fiber Flax & Granola, (24) Corn Flakes, (25) Hole 'n Oats Fruit Juice Sweetened, (26) Hole 'n Oats Honey Nut, (27) Fruit &

1

Yogurt Bar Blueberry Apple, (28) Fruit & Yogurt Bar Strawberry Apple, (29) Fig Bars Blueberry Low Fat, (30) Fig Bars Multigrain, (31) Fig Bars Wheat Free Raspberry, (32) Fig Bars Whole Wheat, (33) Snackimals Chocolate Chip, (34) Snackimals Double Chocolate, (35) Snackimals Peanut Butter, (36) Honey Rice, and (37) Snackimals Wheat Free Oatmeal (collectively, the "Products").

5.      In an effort to capture a segment of the lucrative health food market, Defendant has systematically marketed and advertised the Products as "all natural" on the cereal boxes and bags, on its website, TV commercials and social media such as Facebook, so that any United States consumer who purchases the Products is exposed to Defendant's "all natural" claim.

6.      This claim is deceptive and misleading because the Products are made with unnatural ingredients.  Specifically, the Products are made with plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own.  Genetically modified organisms ("GMOs") are not natural by design.  In addition, the Products contain synthetic ingredients that are chemically-derived and not natural.

7.      Accordingly, Barbara's misleads and deceives reasonable consumers, including the named Plaintiffs and the other members of the Class, by portraying a product made from unnatural ingredients as "All Natural."

8.      Barbara's conduct harms consumers by inducing them to purchase and consume a product with GMOs on the false premise that the product is "all natural."

9.      Plaintiff brings claims against Defendant individually and on behalf of a nationwide class of all other similarly situated purchasers of the Products for violations of California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.* ("UCL"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and breach of express warranties.  Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to purchase the products at issue.

////

////

////

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 12-CV-02664-CRB

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

11.     The Court has personal jurisdiction over Defendant because Defendant is incorporated in California and has its primary manufacturing facility in Petaluma, California.  Defendant is authorized to, and conducts, substantial business in California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events and omissions giving rise to this action occurred in this District in Defendant's primary manufacturing plant in Petaluma, California.

## PARTIES

13.     Plaintiff Richard W. Trammell is a resident of Los Angeles, California and Granger, Texas.  Mr. Trammell has purchased numerous Products in Los Angeles, California and in Austin, Texas over the past four years in reliance on Defendant's representations that the Products were  "All Natural."  These representations and omissions were material to Mr. Trammell's decision to purchase the Products.  Mr. Trammell was willing to pay for the Products because of the representations that they were "all natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in absence of the representations.

14.     Defendant Barbara's Bakery, Inc. is a California corporation with its principal place of business at 3900 Cypress Drive, Petaluma, California 94954.  Defendant manufactures and distributes the Products from its manufacturing plant in Petaluma, California to consumers in California and throughout the United States.

## SUBSTANTIVE ALLEGATIONS

### Defendant Deceptively Labels The Corn-Based Puffins® As "All Natural"

15.     Throughout the Class Period, Defendant systematically marketed and advertised the Products as "all natural" in product packaging, print advertisements, in television commercials, on its

website, and on social media sites such as Facebook.  The "all natural" message is inherently

intertwined with the Barbara's Bakery brand definition and recognition.

16.     For example, Defendant labels every box or bag of the Products as "All Natural Since

1971" next to a red heart with an image of a stalk of grain in it, in the same color block as the brand

name Barbara's.  The color block spans across a bucolic scene, also in the shape of a heart, of a small

farm with rows of crops, trees, mountains and sky and the words "Petaluma, California":



17.     The back of such boxes or bags also features numerous slogans and representations to induce the purchaser into believing that the Products are all natural, including the following statements:

- "Eat the Way you Live, Naturally."
- "At Barbara's®, we believe the best things in life are all natural – like smiles, hugs, and our super tasty Multigrain Puffins made with whole oats, brown rice and corn…"
- "healthy living, naturally"
- "Honest Goodness.  Give our other all natural products a try."
- "Celebrate Family! In 1971, when Barbara started our company, Petaluma was at the heart of the natural foods movement.  Petaluma is still a place of farms, milk cows, and people deeply connected to nature.  The movement has spread and our family of products has grown too.  We chose a few of our favorite cereals to create a "family size."  Now everyone can enjoy Barbara's original vision – make great tasting, healthy foods what people love – all without artificial ingredients or preservatives.  Gather the family around the table and enjoy!"
- "*healthy living, naturally*

    Make a Puffins breakfast or snack part of saying "yes" to your healthy, active lifestyle.  Good health habits are built with dedicated repetition, day after day…and bowl after bowl.  Let Barbara's delicious natural foods help you create the healthy lifestyle you deserve."
- "Make Friends with All Natural Goodness."
- "A Naturally Dynamic Duo.  At Barbara's®, our recipe for success is great taste and all-natural ingredients…"
- "The Best Things in Life are Natural.  Morning at Barbara's® finds us in the kitchen with big red bowls, munching on crunchy Peanut Butter Puffins.  Each mouthful is a burst of real peanut butter and the best whole grain oats and corn.  We happen to think our cereal is one incredibly delicious combo of great taste and natural nutrition.  Plus, it's low in fat

5

and always free of artificial flavors, preservatives and additives –because that's Barbara's way":



6

18.     Similarly, on its website http//www.bararasbakery.com, Defendant makes numerous statements and representations to re-enforce the "all natural" part of its brand.

19.     For example, at the top of the homepage, a changing banner appears with the following slogans:

- Eat Natural, Live Natural. Start with Breakfast.

- Let's eat the way we live. Naturally.

- A hug, a smile, and whole grains.  The best things in life are natural.

- We believe sunny afternoons should be spent outside. And snacks should be natural.

(http://www.barbarasbakery.com (last visited on January 7, 2013).)

20.     In recounting the company's history, and referring to its alleged founder, Defendant states, among other things: "Barbara, then 17, found her calling in real food and opened a small natural bakery in Northern California.  She had a simple plan  - make wholesome food taste incredibly delicious.  Inspired by good health, family, and the kitchen table as the cornerstones of the good life, she used whole grains and oats just as nature intended – free from anything artificial…  Today, a few of us wish we still wore flowers in our hair like Barbara did. And, we know our mission is clear: healthy people, naturally. We carry on Barbara's commitment to create the best-tasting natural products free of artificial preservatives and ingredients, hydrogenated oils, and refined white sugar." (http://www.barbarasbakery.com/about/ (last visited on January 7, 2013).)

21.     Another page of the website boasts as follows:

" **We've Got a New Look and it's Just as Natural as Our Ingredients**.

We've been making great tasting naturally healthy food—free of artificial colors, preservatives and harmful additives since 1971. Our bold, simplified look, featuring 100% recycled carbon neutral GreenChoice cartons makes it easier for health conscious consumers to find us in their local grocery store.

It's all part of our long-term commitment to natural ingredients. Barbara's is a company born and raised on the values of the natural foods movement of the early 1970s. These pioneers believed that promoting sustainable agriculture and green living along with eating natural and organic would lead to healthier, happier lives.

7

1    Barbara opened a small natural bakery with a strong commitment to healthier foods,

2    but with a slightly different point of view: what good is healthy food if no one will eat it? She

3    made sure that her naturally wholesome foods taste great as well. It's no surprise that Barbara's

4    is still thriving and we still live by the principle our founder believed in: that making great

5    tasting recipes with all-natural ingredients will make your family healthier and happier.

6    Naturally.

7    **All Natural Since 1971**."

8    (http://www.barbarasbakery.com/new-look/ (last visited on January 7, 2013).)

9    22.    The "all natural" claim is re-enforced and re-iterated throughout television commercials

10   for the Products.  For example, one TV ad entitled "Pass the Puffins" features a mother and her twin

11   sons at breakfast, conversing with an animated puffin bird as follows:

12        Mom: I found the greatest cereal.  It's all natural and it's called Penguins
             cereal.
13        Puffin: No, no, it's called Puffins.
          Mom: Even my kids love the naturally sweet taste and the cute penguin
14           on the box.
          Puffin: Ah, I am kind of cute, thank you . . . but I'm also a puffin, not a
15           penguin.  We don't even live in the same hemisphere!
          Mom: [smiles] ...and Penguins has only five grams of sugar.
16        Puffin: [squawks in frustration, then addresses twin sons] Does- Does she
             get your names right?
17        [Twins look at each other with blank expressions]
          Puffin: ...that's excusable.
18        Narrator voiceover: Puffins Cereal, in the natural food aisle.
          Puffin: Pass the Puffins.
19
20        ["Pass the Puffins" text on screen]

21

22   (http://www.barbarasbakery.com/ (last visited January 7, 2013).)

23   23.    By consistently and systematically marketing and advertising the Products as "all

24   natural," throughout the Class Period, Defendant ensured that all consumers purchasing the Products

25   would be exposed to its "all natural" claim.

26   24.    A claim that a product is "natural" is material to a reasonable consumer.

27   ////

28

**Genetically Modified Organisms Are Not Natural**

25.     The dictionary defines the term "natural" as "existing in or produced by nature:  not artificial."  (Webster's Ninth New Collegiate Dictionary 788 (1990).)  This common dictionary definition of the term "natural" is consistent with the expectations of a reasonable consumer.

26.     GMOs are not natural, let alone "all natural."  Monsanto, the company that makes GMOs, defines GMOs as "Plants or animals that have had their genetic makeup altered to exhibit *traits that are not naturally theirs*.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." (http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited January 7, 2013) (emphasis added).)  "Unnatural" is a defining characteristic of genetically modified foods.

27.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMOs as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance.  Seed harvested from GMO plants will also contain these [sic] modification." (http://www.romerlabs.cornlen/analytes/genetically-modified-organisms.html (last visited January 7, 2013) (emphasis added).)

28.     That GMOs are not natural is further evidenced by the explanations of health and environmental organizations, such as The World Health Organization, which defines GMOs as "organisms in which *the genetic material (DNA) has been altered in a way that does not occur naturally*.  The technology is often called 'modern biotechnology' or 'gene technology', sometimes also 'recombinant DNA technology' or 'genetic engineering'.  It allows selected individual genes to be transferred from one organism into another, also between non-related species.  Such methods are used to create GM plants – which are then used to grow GM food crops."  (World Health Organization, 20 Questions on Genetically Modified (GM) Foods at http://www.who.int/foodsafety/publications/biotech/en/20questions_en.pdf (last visited January 7, 2013).)

9

29.     The Environmental Protection Agency has distinguished conventional breeding of plants  "through natural methods, such as cross-pollination" from genetic engineering using modern scientific techniques.  (United States Environmental Protection Agency, Prevention, Pesticides and Toxic Substances, Questions & Answers Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules (Jul. 19, 2001) at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf ("*Conventional breeding* is a method in which genes for pesticidal traits are introduced into a plant *through natural methods*, such as cross-pollination. . . . Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modem scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material.") (emphasis of "through natural methods" added; remaining emphasis in original) (last visited January 7, 2013).)

30.     As indicated by the definitions above, which come for a wide array of sources, including industry, government, and health organizations, GMOs are not "all natural."  GMOs are "created" artificially in a laboratory through genetic engineering.  Thus, by claiming that its Products are "all natural," Defendant deceives and misleads reasonable consumers.

### The Products Are Made From Genetically Modified Organisms

31.     Based on independent third party testing, Defendant's Products are made from GMOs. As listed in Paragraph 4 above, Products (1) through (25) contain GMO corn, whereas Products (26) through (35) contain GMO soy.

32.     Defendant's "all natural" representations are false, deceptive, misleading, and unfair to consumers, who are injured in fact by purchasing a product that Defendant claims are "all natural" when in fact they are not.

### The Products Contain Synthetic, Chemically-Derived Ingredients

33.     The Food and Drug Administration ("FDA") has established guidelines that define the appropriate boundaries for using the term "natural"; according to the FDA, a product is not natural if it contains synthetic ingredients, including added color or artificial flavoring.  The exact definition provided by the FDA states: "'natural' [means] that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 12-CV-02664-CRB

34.     The term "synthetic" is also defined in federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(21).

35.     The Products contain one or more synthetic substances or non-natural ingredients, which include but are not limited to:

a.     <u>Annatto</u>:  Chemically extracted annatto seed used for artificial coloring.  21 C.F.R. 101.22(a)(4).

b.     <u>Ascorbic Acid</u>:  An artificial form of Vitamin C produced through a series of chemical processes; commonly used in beverages as a preservative.  Federal statute classifies Ascorbic Acid as a synthetic ingredient.  7 C.F.R. § 205.605(b).

c.     <u>Calcium Carbonate</u>:  Lime soda processed with Calcium Hydroxide and other chemical compounds; commonly used for artificial coloring.  Calcium Hydroxide is classified as synthetic.  7 C.F.R. § 205.605(b).

d.     <u>Ferric Orthophosphate</u>:  Produced by reacting Ferric Chloride or Ferric Citrate with Sodium Phosphate, a classified synthetic ingredient.  7 C.F.R. § 205.605(b).

e.     <u>Nutra Flora:</u>  A synthetic fiber supplement produced with chemical compounds that include hydrochloric acid and sodium hydroxide.

f.     <u>Retinyl Palmitate</u>:  A synthetic substance derived by esterifying retinol with palmitic acid.  It is commonly listed as Vitamin A but is chemically different than natural Vitamin A, or retinol.

g.     <u>Tocopherols</u>:  Classified as a synthetic ingredient.  7 C.F.R. § 205.605(b). Commonly misrepresented (as Defendant does here) as "natural Vitamin E," despite being chemically distinct from naturally occurring Vitamin E.

h.     <u>Vitamin D3</u>:  Although it is naturally produced by human skin, for foods Vitamin D3 is chemically derived by ultraviolet irradiation and used as an additive.

36.     The Products also contain ingredients from natural sources that have been extensively processed using synthetic substances.  As an example, "Dehydrated Cane Juice" is the end product of sugar cane being processed with Phosphoric Acid and Calcium Hydroxide to extract cane syrup prior to dehydration.  Phosphoric Acid and Calcium Hydroxide are classified as synthetic ingredients.  7 C.F.R. § 205.605(b).  The FDA has also indicated that the use of the term "cane juice" is misleading, since it is not "juice" but syrup derived from sugar.  *See* FDA Guidance for Industry: Ingredients Declared as Evaporated Cane Juice; Draft Guidance, October 2009.

### CLASS ACTION ALLEGATIONS

37.     Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

> All consumers in the United States who from May 23, 2008 until the final disposition of this case (the "Class Period"), purchased the following Barbara's Bakery Products: (1) Original Puffins Cereal, (2) Multigrain Puffins Cereal, (3) Peanut Butter Puffins Cereal, (4) Cinnamon Puffins Cereal, (5) Peanut Butter and Chocolate Puffins Cereal; (6) Crunchy Cocoa Puffins Cereal, (7) Fruit Medley Puffins Cereal, (8) Multigrain Cereal Bar Apple Cinnamon, (9) Multigrain Cereal Bar Blueberry, (10) Multigrain Cereal Bar Cherry, (11) Multigrain Cereal Bar Raspberry, (12) Multigrain Cereal Bar Strawberry, (13) Multigrain Cereal Bar Original, (14) Multigrain Cereal Bar Triple Berry, (15) Cheese Puffs Original, (16) Cheese Puffs Bakes Original, (17) Cheese Puffs Bakes White Cheddar, (18) Cheese Puffs Jalapeño, (19) Shredded Minis Blueberry Burst, (20) Shredded Spoonfulls Multigrain, (21) High Fiber Original, (22) High Fiber Cranberry, (23) High Fiber Flax & Granola, (24) Corn Flakes, (25) Hole 'n Oats Fruit Juice Sweetened, (26) Hole 'n Oats Honey Nut, (27) Fruit & Yogurt Bar Blueberry Apple, (28) Fruit & Yogurt Bar Strawberry Apple, (29) Fig Bars Blueberry Low Fat, (30) Fig Bars Multigrain, (31) Fig Bars Wheat Free Raspberry, (32) Fig Bars Whole Wheat, (33) Snackimals Chocolate Chip, (34) Snackimals Double Chocolate, (35) Snackimals Peanut Butter, (36) Honey Rice, and (37) Snackimals Wheat Free Oatmeal.

38.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

39.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

40.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The potential members of the Class as defined are so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands or millions of consumers have purchased the Products.

41.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.     Whether Defendant falsely and/or misleadingly misrepresented the Products as being "All Natural";

b.     Whether Defendant's misrepresentations are likely to deceive reasonable consumers;

c.     Whether Defendant violated California Civil Code § 1750, *et seq.*;

d.     Whether Defendant violated California Business and Professions Code § 17500, *et seq.*;

e.     Whether Defendant violated California Business and Professions Code § 17200, *et seq.*;

f.     The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

42.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 12-CV-02664-CRB

43.     <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

44.     <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

45.     <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

**<u>FIRST CAUSE OF ACTION</u>**

**(California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq*.)**

46.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

47.     Defendant publicly disseminated untrue or misleading advertising or intended not to sell the Products as advertised in violation of California Business & Professional Code § 17500, *et seq*., by representing that the Products are "All Natural," when they are not.

48.     Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

49.     Plaintiff reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq.*

50.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

51.     Plaintiff, on behalf of himself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

**SECOND CAUSE OF ACTION**

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

52.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

53.    Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*, by representing that the Products are "All Natural," when they are not.

54.    Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, the False Advertising Law, California Business & Professions Code § 17500.

55.    Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the False Advertising Law as alleged herein.

56.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendant's representations and omissions.

57.    As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

58.    Plaintiff, on behalf of himself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

**THIRD CAUSE OF ACTION**

**(Breach of Express Warranty)**

59.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

60.    Plaintiff brings this claim individually and on behalf of the Class.

61.     Plaintiff and each member of the Class formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased one or more of the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Products and through the marketing campaign, as described above.  The Products' packaging and advertising constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

62.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

63.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Products were "all natural."

64.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of any and all of the Products they purchased.

## FOURTH CAUSE OF ACTION

### (Violation of Consumer Legal Remedies Act – Civil Code § 1750 *et seq.*)

65.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

66.     Plaintiff brings this claim individually and on behalf of the Class.

67.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

68.     Plaintiff and each member of the Class are consumers as defined by California Civil Code §1761(d).

69.     The Products are goods within the meaning of Civil Code §1761(a).

70.     Defendant violated the CLRA in at least the following respects:

    a.     in violation of  §1770(a)(5), Defendant represented that the Products have approval, characteristics, and uses or benefits which they do not have;

b.   in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality or grade, or that the Products are of a particular style, or model, when they are of another;

c.   in violation of §1770(a)(9), Defendant has advertised the Products with intent not to sell them as advertised; and

d.   in violation of §1770(a)(16), Defendant represented that the Products have been supplied in accordance with previous representations, when they were not.

71.   Defendant affirmatively represented to consumers that the Products are "all natural."

72.   Defendant omitted to state that the Products contain GMOs.

73.   This sort of information is relied upon by consumers in making purchasing decisions, and is fundamental to the decision to purchase food products.

74.   Plaintiff relied upon Defendant's misrepresentations to her detriment.

75.   Defendant's misrepresentations constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

76.   Defendant's deceptive acts and omissions occurred in the course of selling a consumer product and have occurred continuously through the filing of this Complaint.

77.   On May 23, 2012, Plaintiff notified Defendant in writing by certified mail of the violations alleged herein and demanded that Defendant remedy those violations.  Defendant received Plaintiff's letter on May 29, 2012.

78.   Defendant failed to remedy the violations alleged herein by June 28, 2012. Consequently, Plaintiff hereby previously amended the Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

**WHEREFORE**, Plaintiff, on behalf of himself and Class members, prays for relief as follows:

A.   For an order that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed Class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

B.   For an order requiring Defendant to refund or pay restitution to Plaintiff and all Class members for the Products;

C.       For an order prohibiting Defendant from engaging in the misconduct described herein;

D.       For an award of damages;

E.       For an award of attorneys' fees;

F.       For an award of the costs of suit incurred herein, including expert witness fees;

G.       For an award of interest, including prejudgment interest, at the legal rate; and

H.       For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.

Dated:  January 17, 2013              Respectfully submitted,

**AHDOOT & WOLFSON, PC**

Tina Wolfson
Robert Ahdoot
Theodore W. Maya
Bradley K. King
10850 Wilshire Blvd., Suite 370
Los Angeles, California 90024
Tel: 310-474-9111
Facsimile: 310-474-8585

Counsel for Plaintiff
Richard W. Trammell

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 12-CV-02664-CRB