TINA WOLFSON, SBN 174806
twolfson@ahdootwolfson.com
ROBERT AHDOOT, SBN 172098
rahdoot@ahdootwolfson.com
THEODORE MAYA, SBN 223242
tmaya@ahdootwolfson.com
BRADLEY K. KING, SBN 274399
bking@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585

*Class Counsel and Attorneys for Plaintiff,*
Richard W. Trammell

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD W. TRAMMELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA'S BAKERY, INC., a California Corporation,<br><br>Defendant. | CASE NO. 3:12-CV-02664-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, INCENTIVE AWARD, AND AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: November 8, 2013<br>Time: 10:00 A.M.<br>Place: Courtroom 6 (17th Floor)<br><br>The Honorable Charles R. Breyer, Presiding<br><br>Filed concurrently with the declarations of Shannon Wheatman, Ph.D., Richard Trammell and Robert Ahdoot |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on November 8, 2013, at 10:00 AM, or at such other date and time as the Court may provide, in Courtroom 6 of the above-entitled Court, the Honorable Charles R. Breyer, Presiding, Plaintiff, Richard W. Trammell ("Plaintiff") will and hereby does move this Court to grant Final Approval of the Class Action Settlement memorialized by the

Settlement Agreement filed with this Court on April 25, 2013 (ECF Dkt. ("Dkt") Nos. 37, 37-1 to 37-10).

Plaintiff, on behalf of a putative nationwide Class in this action, respectfully moves this Court for the following relief:

1.     Finally approving the proposed settlement as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23;

2.     Finally certifying the Class for settlement purposes only;

3.     Finding that the Notice was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements;

4.     Confirming Class Members who have submitted timely requests for exclusion;

5.     Dismissing the Action pursuant to the terms and conditions of the Settlement Agreement;

6.     Retaining jurisdiction over the enforcement and implementation of the Settlement Agreement and any amendments thereto;

7.     Awarding attorneys' fees and costs and class representative awards; and

8.     Issuing related orders.

This Motion thereby seeks that the Court enter a Final Order Approving Class Action Settlement and a Final Judgment in substantially the same form as those previously filed as Exhibits 3 and 4 of the Settlement Agreement (Dkt. Nos. 37-3 and 37-4).

Pursuant to paragraph 7 of the Court's Order Preliminarily Certifying A Class For Settlement Purposes, Preliminarily Approving The Class Settlement, Appointing Class Counsel, Directing Issuance Of Notice To The Class, Scheduling A Fairness Hearing, And Issuing Related Orders (Dkt. 58), Plaintiff expressly reserves all rights to "supplement[]" his Memoranda Of Points And Authorities Law In Support Of Final Approval "up to seven (7) days prior to the Fairness Hearing."

This Motion is based on and made on the ground set forth in this Notice of Motion and the attached Memorandum of Points and Authorities; the concurrently filed declarations of Richard Trammell, Shannon Wheatman, Ph.D., and Robert Ahdoot; the previously filed Settlement

Agreement (Dkt. 37), Motion for Preliminary Approval of Class Action Settlement (Dkt. 36), and supporting exhibits, declarations, and documents; as well as the pleadings, Orders, transcripts and other pleadings, papers and documents on file in this action; and any further evidence and arguments as may be presented at the hearing of this matter.

**AHDOOT & WOLFSON, APC**

Dated: September 30, 2013        /s/ Robert Ahdoot
                                 Robert Ahdoot
                                 Tina Wolfson
                                 10850 Wilshire Blvd., Suite 370
                                 Los Angeles, California 90024
                                 (310) 474-9111 Telephone
                                 (310) 474-8585 Facsimile

                                 *Class Counsel and Attorneys for Plaintiff,*
                                 *Richard W. Trammell*

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................... 1

II.  HISTORY OF THE LITIGATION .................................................................................... 3

  A.  The Litigation And Settlement ..................................................................................... 3

  B.  The Subsequent Cases and Motion to Intervene. .......................................................... 6

III.  SETTLEMENT TERMS .................................................................................................. 7

  A.  The Settlement Class ................................................................................................... 7

  B.  Monetary Relief to Settlement Class Members ............................................................. 8

    1.  The Settlement Fund and Payments to Class Members ............................................ 8

    2.  In the Unlikely Event That There Are Residual Settlement Funds, They Will Not Revert to Defendant. ..................................................................................................... 9

  C.  Non-Monetary Relief to Class Members .................................................................... 11

    1.  Agreement to Modify Product Labeling and Advertising ...................................... 11

    2.  Agreement to Eliminate GMO Ingredients from Certain Eligible Products .......... 11

    3.  The Value of Non-Monetary Consideration Is at Least $3.5 Million — the Cost to Barbara's Bakery ................................................................................................. 12

  D.  Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiff Incentive Award .... 12

IV.  THE CLASS NOTICE PROGRAM AND ITS RESULTS ............................................... 12

V.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT ....... 15

  A.  The Settlement Was Reached After Serious, Informed, and Non-Collusive Arms-Length Negotiations and Mediation ................................................................... 16

  B.  The Risk, Complexity, Expense, and Duration of Continuous Litigation Favor Final Approval ...... 18

  C.  The Substantial Relief Provided by the Settlement Favors Final Approval ..................... 20

  D.  The Extent of Discovery and Stage of the Proceedings Favors Approval ........................ 21

  E.  The Experience and Views of Counsel Favor Approval ................................................ 22

  F.  The Reaction of the Class Members Favors Final Approval .......................................... 23

VI.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ..................... 24

   A.   The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a) ............. 25

      1.   Numerosity ..................................................................................................... 25

      2.   Commonality ................................................................................................. 25

      3.   Typicality ...................................................................................................... 26

      4.   Adequacy of Representation .......................................................................... 27

   B.   The Class Should Be Certified Under Federal Rule of Civil Procedure 23(b)(3) ............................. 27

      1.   Common Questions Predominate Over Individual Issues ............................... 28

      2.   A Class Action is the Superior Method to Settle This Controversy ............... 29

VII.  NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF

      DUE PROCESS ....................................................................................................... 29

VIII.   CLASS COUNSEL'S FEE AND EXPENSE APPLICATION SHOULD BE APPROVED ........... 31

   A.   Fees and Expenses Totaling 25% of the Settlement Fund Are Reasonable ....................... 31

   B.   Class Counsel Request 25% Of The Cash Settlement Fund Of $4 Million As Their Combined

      Fee And Expense Award ............................................................................................. 33

   C.   The Lodestar / Multiplier Crosscheck ............................................................................ 34

      1.   The Hourly Rates are Reasonable ................................................................. 37

      2.   The Hours Expended Are Reasonable ........................................................... 39

   D.   Plaintiff's Expenses Are Reasonable and Compensable ................................................. 39

   E.   The Requested Incentive Award Is Reasonable .............................................................. 40

IX.   CONCLUSION ...................................................................................................... 41

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 24, 28

*Anderson v. Nextel Retail Stores, LLC*, No. CV 07–4480–SVW (FFMx), 2010 U.S. Dist. LEXIS
    43377 (C.D. Cal. Apr. 12, 2010)......................................................................................... 17

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012) ........................................... 25

*Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004) ..................................................... 33

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................................. 26

*Buccellato v. AT&T Operations, Inc.*, No. 10-463, 2011 U.S. Dist. LEXIS 85699
    (N.D. Cal. June 30, 2011) ................................................................................................ 36

*Californians for Disability Rights v. Cal. DOT*, 2010 U.D. Dist. LEXIS 141030
    (N.D. Cal. Dec. 13, 2010) ................................................................................................ 38

*Center for Biological Diversity v. County of San Bernardino*, 195 Cal. App. 4th 866 (2010)........ 35

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ............................................................ 33, 39

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................... 17, 21, 23

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................ 19, 22, 23, 30

*Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS (C.D. Cal. July 27, 2010) . 41

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................... 15, 16

*Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ...................................................... 35

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal.App. 4th 963 (1992) ............. 10

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................... 36

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ........................................................... 10, 11

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ..................................................... 29

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) ........................................................ 32

*Edmunson v. P&G*, No. 10-CV-2256-IEG (NLS) 2011 U.S. Dist. LEXIS 102561
    (S.D. Cal. Sep. 8, 2011) .................................................................................................. 18

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) .......................................................... 30

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ........................................ 22

*Galluci v. Boiron, Inc.*, No. 11-CV-2039, 2012 U.S. Dist. LEXIS 157039
(S.D. Cal. Oct. 31, 2012)..................................................................................... 23

*Garcia v. Gordon Trucking, Inc.*, No. 10-CV-0324, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct.
31, 2012) ................................................................................................................ 23

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS
49477 (N.D. Cal. Apr. 22, 2010) ........................................................................ 16

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW(EMC), 2010 U.S. Dist. LEXIS
49477 (N.D. Cal. Apr. 22, 2010) ........................................................................ 41

*Glendale City Employees' Ass'n. v. Glendale*, 15 Cal. 3d 328 (1975) ........................................... 33

*Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465 (1984)................................... 36

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004)................................................... 35

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................................*passim*

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................ 26

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................ 39

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ..................... 25

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ................................... 28, 35, 39

*Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2004) ..................... 39

*Hensley v. Eckhart*, 461 U.S. 424 (1983).................................................................. 35

*Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872
(Nov. 2, 2005).................................................................................................... 38

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003).. 31

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002) ....................................... 27

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ............................ 22

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ........................................ 26

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ................................... 39

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................... 33, 41

*In re Mengo Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)............................ 16

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..................... 23

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. 2008) ................... 22

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................. 39

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ...................................... 33

*In re Tobacco Cases I*, 216 Cal. App. 4th 570 (2013) ................................................. 35

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ............................................. 20

*In re Vitamin Cases*, 110 Cal. App. 4th 1041 (2003) ................................................. 36

*In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) ........... 18

*Iorio v. Allianz Life Ins. Co. of N. America*, No. 05-CV-0633-JLS (CAB),
2011 U.S. Dist. LEXIS 21824 (S.D. Cal. March 3, 2011) ........................................ 38

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) .............................................. 28

*Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) ............................... 26

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935
(9th Cir. 2011) ............................................................................................ 32, 34, 35

*Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) ................. 27

*Kempf v. Barrett Bus. Servs.*, No. C-06-3161 SC, 2007 U.S. Dist. LEXIS 89447
(N.D. Cal. Nov. 20, 2007) ......................................................................................... 37

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........................................................ 35, 37

*Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) .......................... 37

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (2000) ....................... 32, 33, 35, 36

*Lingenfelter v. Astrue*, No. SA CV-03-00264-VBK, 2009 U.S. Dist. LEXIS 87685
(C.D. Cal. Sep. 3, 2009) ............................................................................................ 38

*Linney v. Cellular Alaska P'ship, No.* C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997) ......................................................................................... 17

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD),
2011 U.S. Dist. LEXIS 144490 (S.D. Cal. Dec. 15, 2011) ..................................... 30

*Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) ..................... 39

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .................................................................................. 28

*Love v. Mail on Sunday*, No. CV-05-7798-ABC (PJWX), 2007 U.S. Dist. LEXIS 97061 (C.D. Cal.
Sept. 7, 2007) ............................................................................................................ 38

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ................................. 19

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007) ................................... 32

*Mathias v. Smoking Everywhere, Inc.*, 2:09-cv-03434-GEB, 2011 U.S. Dist. LEXIS 121687
    (E.D. Cal. Oct. 20, 2011) ................................................................................ 25

*McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA,
    2009 U.S. Dist LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ............................................ 34

*Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980) ................................ 30

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y 1984) ........................................................ 19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................ 30

*Nachshin v. AOL, LLC*, 663 F.2d 1034 (9th Cir. 2011) ................................................ 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................... 24

*Negrete v. Fid. and Guar. Life Ins. Co.*, No. CV-05-6837- CAS-MANx
    (C.D. Cal.  April 19, 2010) ........................................................................ 38

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ..................... *passim*

*Parker v. Los Angeles*, 44 Cal. App. 3d 556 (1974) ........................................................ 33

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ............................. 34

*Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322 (W.D. Wash. 2009) ............................. 41

*POM Wonderful, LLC v. Purely Juice, Inc.*, No. 07-2633, 2008 U.S. Dist. LEXIS 110460
    (C.D. Cal. Sept. 22, 2008) ................................................................... 38, 39

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ........................................................ 32

*Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 U.S. Dist. LEXIS 72250
    (E.D. Cal. July 6, 2011) ................................................................................ 35

*Rider v. San Diego*, 11 Cal. App. 4th 1410 (1992) ........................................................ 39

*Rodriguez v. D.M. Camp & Sons*, No.: 1:09-cv-00700 – AWI – JLT,
    2013 U.S. Dist. LEXIS 69282 (E.D. Cal. May 15, 2013) ............................................ 32

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ........................................................ 32

*Rodriguez v. West Pub'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................ 16, 21, 30, 40

*San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738 (1984) ....... 36, 37

*Sanders v. City of L.A.*, 3 Cal. 3d 252 (1970) ........................................................ 33

*Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) ......................... 37

*See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............ 16

*Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25 (1977) ........................................... 33, 39

*Shames v. Hertz Corp.,* No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577
    (S.D. Cal. Nov. 5, 2012) ........................................................................................ 38

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .............. 9, 10, 32

*State of California v. Meyer*, 174 Cal. App. 3d 1061 (1985) ....................................................... 36

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ...................................................................... 27, 39

*Steinberg v. Allstate Ins. Co.*, 226 Cal. App. 3d 216 (1990) ...................................................... 33

*Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061
    (9th Cir. Aug. 29, 2007) ........................................................................................ 36

*SternwestCorp. v. Ash*, 183 Cal. App. 3d 74 (1986) ................................................................. 36

*Suzuki v. Hitachi*, 2010 U.S. Dist. LEXIS 22908, 2010 WL 956896 (N.D. Cal March 12, 2010).. 38

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)............................................. 16, 18

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)................................. 40

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) .................................................................... 29

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................... 32, 35

*Walmart Stores, Inc. v. Dukes*, ____ U.S. _____, 131 S. Ct. 2541 (2011) .................................... 25

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ................................... 32, 36, 39

*Wren vs. RGIS Inventory Specialists,* 2011 U.S. Dist. LEXIS 38667 N.D. Cal. Apr. 1, 2011)....... 38

*Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269
    (N.D. Cal. Mar. 28, 2007) .................................................................................... 21

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192, 2011 U.S. Dist. LEXIS 60608
    (N.D. Cal. June 7, 2011) ....................................................................................... 26

## STATUTES

Cal. Bus. & Profs. Code §17200 ................................................................................................ 4

Cal. Bus. & Profs. Code §17500 ................................................................................................ 4

Cal. Civ. Code §1750 ............................................................................................................... 4

Federal Rule of Civil Procedure 23 ........................................................................ 15, 25, 28, 29

## OTHER AUTHORITIES

4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions* §11:41 .................................................. 15

4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions*, §3.3 .................................................. 25

H. Newberg & A. Conte, *Newberg on Class Actions*, §12.08, at 50-51 (2d ed. 1993).................... 39

*Manual for Complex Litigation (Fourth)* §21.62 (2004) ........................................................ 15

*Sheppard v. Cons. Edison Co. of N.Y., Inc.,* No. 94-CV-0403(JG),
2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002) ............................................ 40

Theodore Eisenberg & Geoffrey P. Miller,
*Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
53 U.C.L.A. L. Rev. 1303, 1303 (2006) ..................................................................... 40

*Williams v. Costco Wholesale Corp.*, No. 02 CV 2003 IEG (AJB),
2010 U.S. Dist. LEXIS (S.D. Cal. July 7, 2010)......................................................... 41

## TREATISES

Wright & Miller, Fed. Prac. & Proc. (3d ed.) ................................................................... 28

Wright & Miller, *Federal Practice & Procedure* (2d ed. 1986).......................................... 28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Class representative Richard Trammell respectfully submits this Memorandum in Support of the Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment (the "Judgment") and Final Order Approving Class Action Settlement (the "Final Order").[1]

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff seeks final approval of a proposed nationwide class action Settlement with Barbara's Bakery, Inc. ("Barbara's Bakery") that was preliminarily approved by this Court as fair, reasonable, and adequate. Settlement Agreement ("Settlement Agmt.") (ECF Docket Nos. ("Dkt.") 37, 37-1 to 37-10 ("Settlement"); Order Granting Plaintiff's Motion for Preliminary Approval ("Preliminary Approval Order"), Dkt. 58). The Settlement satisfies Plaintiff's primary goal in bringing this lawsuit — monetary relief in the form of a payment of up to $100 for purchases of Barbara's Bakery, Inc.'s ("Barbara's Bakery") Eligible Products during the Class Period, an end to the challenged advertisements, and Barbara's Bakery's agreement to use reasonable and verifiable efforts to eliminate the use of GMO ingredients in most of the currently sold Eligible Products. This relief represents a significant, if not full refund, of all claimants' purchases, up to $100.

The gravamen of this litigation was Barbara's Bakery's allegedly false representations in its advertising and labeling of its Eligible Products. Barbara's Bakery advertised that its products were "all natural" and did not contain any artificial preservatives, additives, or flavoring. Plaintiff challenged these advertisements, asserting *inter alia* that the products are not "all natural" in that they contain ingredients that are synthetic and/or artificial, and/or they contain ingredients that are or are derived from Genetically Modified Organisms ("GMOs"). Although Barbara's Bakery denies all charges of wrongdoing or liability, the Parties have agreed to settle this matter upon the terms set forth in the Settlement Agreement.

---

[1]    Unless stated otherwise, all capitalized terms have the same meaning as set forth in the Settlement Agreement filed on April 25, 2013, and all ECF Docket ("Dkt") references are to docket entry numbers in this case.

The Settlement was reached after extended settlement negotiations and mediations presided over by the Honorable Eugene F. Lynch of JAMS, in addition to numerous and lengthy direct negotiations between the Parties. The Settlement provides for the creation of a $4 million non-revertible Settlement Fund to provide cash payments to Class Members and to pay Settlement-related fees and expenses. Settlement Agmt., §§IV.A.-IV.D. (Dkt. 37). Eligible claimants may receive up to $100 for valid claims made against the fund. *Id.* at §IV.C.

In addition to cash payments to Class Members, Barbara's Bakery has agreed to modify the marketing of the Eligible Products by removing the "all natural," "no artificial additives," "no artificial preservatives," and "no artificial flavors" statements from product labeling, Barbara's Bakery's website, and any other media or advertising for at least three years after the Final Settlement Date. *Id.* at §IV.E. Further, Barbara's Bakery has agreed to eliminate the use of GMO ingredients from a majority of the Eligible Products and subject them to the rigorous testing and standards of the nonprofit Non-GMO Project's Product Verification Program. *Id.* at §IV.F.

The value of this non-cash consideration to the Class is at least $3.5 Million (the cost to Barbara's Bakery) over the next 3 years. Declaration of David K. Rey in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Rey Decl.") (Dkt. 36-3). However, the full benefit to Class Members of being able to purchase non-GMO products in the future is exponentially greater.

Though there are currently sufficient claims submitted by Class Members so that *there will not be any residual*, in the event money remains in the Settlement Fund after all eligible claims are paid, it will be paid to 501(c)(3) nonprofit organizations whose work provides a benefit to the Class and bears a strong relationship to the claims that Plaintiff asserts in this action. Settlement Agmt., §IV.D.3 (Dkt. 37). The Parties have selected, and ask the Court to approve, the following charities: Consumers Union and Action for Healthy Kids.[2] *Id.*

---

[2] These organizations are appropriate *cy pres* recipients. *See* Declaration of Elisa Odabashian in Support of Preliminary Approval of Class Action Settlement ("Odabashian Decl.") (Dkt. 36-4); Declaration of Mary Haley in Support of Preliminary Approval of Class Action Settlement ("Haley Decl.") (Dkt. 36-5).

Class Members must submit a Claim Form to receive monetary relief. *Id.* at Exhibit ("Exh.") 1 (Dkt. 37-1). The Claim Forms are available for easy electronic submission on the website established for this Settlement or via mail. Declaration of Shannon Wheatman, Ph.D. on Implementation and Adequacy of Notice Plan in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Wheatman Decl."), ¶ 41 filed concurrently herewith; *Id.* at Exh. 6; *see also*, www.BarbarasBakerySettlement.com. The Claim Form is simple and straightforward. Class Members need only declare the monetary amount of their purchases of the Eligible Products that they purchased between May 23, 2008 and July 15, 2013 — no proof of purchase is required. *See* Wheatman Decl., Exh. 6; *see also* Settlement Agmt., §IV.B.3 and Exh. 1 (Dkt. 37).

In addition, the Settlement allows Class Counsel to apply for an award of attorneys' fees and litigation-related expenses from the Settlement Fund to be approved by the Court. Settlement Agmt., §IX.A (Dkt. 37). Counsel seeks an award of 25% of the cash Settlement Fund, or 13.3% of the total value of the Settlement (if non-monetary consideration is evaluated at cost to Barbara's Bakery), in attorneys' fees and out-of-pocket expenses. This amount equates to Class Counsel receiving their lodestar with a multiplier of 1.88. This is well within the acceptable range established by state and federal case law.

The Settlement represents an excellent recovery for the Class — a point confirmed by the fact that, as of September 27, 2013, only one Class Members has elected to opt out and that no objections have been filed to date. Wheatman Decl., ¶ 52. This is significant considering the wide breadth of the Court-approved Class Notice program, detailed below, which was designed to target the numerous potential Class Members.

For the reasons set forth below, the Court should find that the proposed Settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) and should be granted final approval and that the Class meets all of the applicable requirements for certification. The Court should also grant approval of the requested Attorneys' Fees and Expenses and incentive award to Plaintiff.

## II.    HISTORY OF THE LITIGATION

### A.    The Litigation And Settlement.

Class Counsel began investigating the facts underlying this matter months before filing this

action. Class Counsel reviewed and analyzed Barbara's Bakery's advertising and labeling, retained a consulting expert who assisted in understanding the scientific issues and in evaluating the accuracy of the advertising claims, and conducted an independent investigation of the scientific and factual basis for the advertising of the products at issue. Declaration of Robert Ahdoot filed concurrently herewith ("Ahdoot Decl.") at ¶¶ 3-4.

Plaintiff filed this Action on May 23, 2012, and sought to certify a class of all consumers in the United States who, during the Class Period, purchased Barbara's Bakery's products. A First Amended Complaint (Dkt. 5) was filed on June 28, 2012, and the Second Amended Complaint (Dkt. 29) was filed on January 30, 2013. The Second Amended Complaint alleges violations of California's Unfair Competition Law, Cal. Bus. & Profs. Code §17200 *et seq.* ("UCL"); California's False Advertising Law, Cal. Bus. & Profs. Code §17500 *et seq.* ("FAL"); California's Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* ("CLRA"); and breach of express warranty. Plaintiff sought restitution, disgorgement of revenues, injunctive relief, damages, reasonable attorneys' fees and costs, statutory pre-judgment interest, and any other relief the court might deem just and proper.

Barbara's Bakery answered the First and Second Amended Complaints (Dkts. 10, 32), expressly denying any and all wrongdoing alleged in the action.

Class Counsel began conducting extensive discovery early in the litigation. The Parties negotiated and were able to agree on the terms of a lengthy Stipulated Protective Order that was later issued by the Court (Dkt. 18). Through significant discovery efforts, Class Counsel obtained and reviewed over thirty (30) banker's boxes of documents and approximately seventy (70) Gigabytes (GB) of data, which concerned: (i) label design and product formulation; (ii) marketing, advertising, media, and public relations; and (iii) financial information. Ahdoot Decl., ¶ 9.

In addition, Class Counsel conducted interviews of primary Barbara's Bakery's corporate witnesses who have been involved with the Eligible Products to address the following subjects: (i) sales and marketing; (ii) labeling; (iii) finance; (iv) document collection and retention; and (v) Barbara's Bakery's efforts to eliminate GMO ingredients from its products. *Id.* at ¶10.

The Parties began discussing potential settlement early in the litigation, in an effort to resolve the action as efficiently as possible. Counsel engaged in numerous settlement discussions as discovery proceeded. *Id.* at ¶ 12. The Parties agreed that retired Northern District Judge Eugene F. Lynch of JAMS, a respected and experienced mediator widely recognized as one of the best mediators in the state, would mediate the case. *See* www.jamsadr.com/lynch/ (last visited September 30, 2013). Class Counsel submitted a lengthy mediation brief to the mediator, and thereafter the Parties engaged in two rounds of mediation, on November 28, 2012, and again on January 11, 2013. Ahdoot Decl., ¶ 14. The principal terms of the Settlement were agreed upon at the second of these mediation sessions. *Id.* On January 31, 2013, the parties filed a Notice of Settlement with the Court (Dkt. 30).

Subsequently, the Parties engaged in additional extensive negotiations to finalize and memorialize all aspects of the Settlement Agreement, including each of the 10 exhibits. During this process, the Parties engaged Rust Consulting, Inc. and Kinsella Media, LLC to advise as to the mechanics and specifics of a notice program. The notice program and each document comprising the notice were negotiated and exhaustively refined to make them easy to read and understand and to maximize the likelihood of broad Class Member participation in the claims process. *Id.* at ¶¶ 15-16. As discussed below, the notice program was very effective.

On April 25, 2013, Plaintiff filed a Stipulation of Settlement (Dkt. 37) and a Motion for Preliminary Approval of Class Action Settlement (Dkt. 36), along with exhibits and supporting declarations. On April 26, 2013, Barbara's Bakery filed a Motion for Preliminary Approval of Class Action Settlement and Request for Preliminary Injunction, seeking to enjoin the Courts in the Subsequent Cases (defined below) from proceeding in those matters (Dkt. Nos. 39 to 42).

The Court held a hearing on June 21, 2013, and subsequently granted the Motion for Preliminary Approval and denied the Motion for Preliminary Injunction (Dkt. 56). The Court noted that the Settlement was an "excellent settlement," a "model of good lawyering on both sides," and reflected an "excellent job of resolving the case." Transcript of Proceeding (June 21, 2013), 8:10 17:20-25, Ahdoot Decl., Exh. 1.

On June 26, 2013, the Court issued its Order Preliminarily Certifying a Class for Settlement

Purposes, Preliminarily Approving the Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, Scheduling a Fairness Hearing, and Issuing Related Orders ("Preliminary Approval Order") (Dkt. 58).

Immediately thereafter, Class Counsel, working with the Notice and Settlement Administrator, expended significant efforts in creating the Settlement website and ensuring the timely and correct implementation of the Notice Program described in the Declaration of Shannon Wheatman, Ph.D. in Support of the Motion for Preliminary Approval (Dkt. 36-2). Pursuant to the Preliminary Approval Order (Dkt. 58), dissemination of the Class Notice commenced on July 5, 2013. Wheatman Decl., ¶¶ 16, 35. Thereafter, Class Counsel oversaw the dissemination of notice and ensured that the Notice Program was carried out in a timely manner pursuant to its terms. Ahdoot Decl., ¶ 27.

**B.     The Subsequent Cases and Motion to Intervene.**

Months after this action was commenced, and after the parties had made significant progress toward settlement, several other plaintiffs filed similar actions: (i) *Silber v. Barbara's Bakery, Inc.*, Case No. 1:12-cv-05511-WFK-RLM (E.D.N.Y) (filed Nov. 5, 2012); (ii) *Rojas v. Barbara's Bakery, Inc.*, Case No. CGC-12-525911 (San Francisco Superior Court) (filed Nov. 7, 2012); and (iii) *Moro v. Barbara's Bakery, Inc.*, Case No. 1:12-cv-06087-WFK-RLM (E.D.N.Y.) (filed Dec. 11, 2012) (collectively, the "Subsequent Actions").[3] The *Silber* and *Moro* action are both pending before the Honorable William F. Kuntz, II in the U.S. District Court for the Eastern District of New York.

On May 10, 2013, counsel in the *Silber* action filed a "letter" in this action voicing their opposition to the request for injunction and stay of the subsequent actions (Dkt. 43), to which Barbara's Bakery filed a reply (Dkt. 44). On May 29, 2013, the parties in *Silber*, *Rojas*, and *Moro* action filed a Motion for Intervention for the limited purpose of opposing Barbara's Bakery's

[3]     Like this action, these three are putative class actions that are primarily premised on Barbara's Bakery's alleged false advertising of its products as "all natural," when in fact they contain genetically modified organisms ("GMOs") and other synthetic ingredients. *See, e.g.* Complaints filed in *Silber* (Dkt. Nos. 46-2 and 46-3), *Rojas* (Dkt. 46-4), and *Moro* (Dkt. 46-5).

Motion for Injunction (Dkt. Nos. 46, 46-1 - 46-7), along with an *ex parte* application to shorten time to have the Intervention Motion heard at the same time as the Motion for Preliminary Approval (Dkt. Nos. 47, 47-1 - 47-2). Barbara's Bakery opposed the *ex parte* application and filed a statement of non-opposition with respect to the Motion to Intervene (Dkt. Nos. 48 - 50). Plaintiff opposed the Motion to Intervene (Dkt. 51). This Court ultimately denied the Motion to Intervene as moot "in light of the fact the motion for preliminary injunction was denied" (Dkt. 56).

On July 31, 2013, after being informed in a status report that this Court had preliminary approved the settlement and that the notice program had begun, the Honorable William F. Kuntz, II stayed the *Moro* and *Silber* actions. Order [Staying Actions], Ahdoot Decl., Exh. 2).[4] On June 25, 2013, after Barbara's Bakery filed a notice of the Settlement, the San Francisco Superior Court issued an Order to Show Cause Re Dismissal of the *Rojas* action with a hearing date of December 10, 2013; the Plaintiff filed a response to the OSC on July 1, 2013 and, as of September 30, 2013, the Court has yet to rule on the OSC. Ahdoot Decl. ¶ 33.

## III.   SETTLEMENT TERMS

The Settlement Agreement (Dkt. Nos. 37 to 37-10) contains the complete terms of the settlement and is summarized below.

### A.   The Settlement Class

The Settlement defines a national Settlement Class under Rule 23(b)(3) composed of all persons who, during the Class Period, purchased in the United States any of the Eligible Products.[5]

---

[4]   Judge Kuntz ruled "…that a stay of these actions is clearly warranted. The preliminarily approved nationwide class in *Trammell* includes within it the putative classes identified by Silber and Moro. The *Trammell* settlement contemplates relief identical to the relief sought by the Plaintiffs in *Silber* and *Moro*-removal of references to "natural" and "all natural" in Defendant's labeling and marketing. To the extent Silber or Moro believe additional relief is necessary to adequately remedy their claims, they may file an objection to the *Trammell* settlement. Defendant should not be compelled to defend duplicative-and potentially inconsistent-litigation. For all these reasons, as well as the particularly timely interest in conserving judicial resources, this Court stays both of the above captioned actions." Order [Staying Actions], Ahdoot Decl., Exh. 2).

[5]   Excluded from the Class are: (a) Barbara's Bakery's board members or executive-level officers, including its attorneys; (b) persons who purchased the Eligible Products primarily for the purpose of resale; (c) retailers or re-sellers of the Eligible Products; (d) governmental entities; (e)
[Footnote continued on next page]

---

Settlement Agmt., § II.A.11 (Dkt. 37). "Eligible Products" include a wide array of Defendant's Cereals, Cereal Bars, Granola Bars, Cheese Puffs, Baked Cheese Puffs, Snackimals Animal Cookies, Organic Mini-Cookies, Snack Mixes, and Crackers. *Id.* at § II.A.17. The "Class Period" is the period from May 23, 2008, up to July 5, 2013 (the date of the first dissemination of the Summary Settlement Notice or Class Notice). *Id.* at § II.A.15.

        **B.**     **Monetary Relief to Settlement Class Members**

              **1.**     **The Settlement Fund and Payments to Class Members**

Under the Settlement, Defendant will create a $4 million non-revertible fund (the "Settlement Fund") for the benefit of the Class. *Id.* at §§ II.A.30, IV.[6] Class Members are eligible to receive an amount of up to $100, depending on the amount a particular Class Member spent on Eligible Products, and depending on the number of Class Members who submit valid Claims.[7] *Id.* at § IV.C. If the total amount of eligible and approved claims exceeds the total amount available for distribution, then each claim will be proportionately reduced. *Id*. at § IV.D.1.

To obtain the cash payment, Class Members need only return a simple Claim Form. The Claim Form requires the Class Member to provide his or her name, address, and to attest to the

---

[Footnote continued from previous page]
persons who timely and properly exclude themselves from the Class as provided in the Agreement; (f) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (g) the Court, the Court's immediate family, and Court staff.

[6]     The Settlement Fund will be used to pay Class Members claims after deductions for costs of notice and administration, which are estimated to be $786,350 and cannot exceed $875,000 (Wheatman Decl., ¶ 53); an incentive award to Plaintiff not to exceed $2,500; and attorneys' fees and costs not to exceed 25% of the Settlement Fund. Settlement Agmt., §§ IV.A, IV.C. (Dkt. 37).

[7]     Specifically, Class Members are entitled to the following amounts:

| CLASS MEMBERS WHO SPENT: | COULD RECEIVE A MAXIMUM OF: |
| --- | --- |
| More than $100.00 | $100.00 |
| $75.01 to $100.00 | $75.00 |
| $50.01 to $75.00 | $50.00 |
| $25.01 to $50.00 | $25.00 |
| $10.01 to $25.00 | $10.00 |
| $10.00 or less | $5.00 |

amount spent on the Eligible Products in accordance with the amounts specified above. *Id*. at §IV.D.1. and Exh. 1 to Settlement Agmt. (Dkt. 37-1). The Claim Form is available either online at a website specifically set up for the Settlement (www.BarbarasBakerySettlement.com) or by U.S. Mail upon request to the Settlement Administrator.

The amounts paid to individual Class Members are designed to provide a substantial recovery that is based on the full retail price of the Eligible Products that Class Members purchased (up to $100), thereby providing generous compensation to claimants as measured by any theory of damages, whether based on a theory of restitution of the full amounts Class Members paid or based on any other theory that would compensate Class Members for a lesser portion of their purchase price.

**2.** **In the Unlikely Event That There Are Residual Settlement Funds, They Will Not Revert to Defendant.**

Given the number of claims as of September 27, 2013, *it is highly unlikely that there will be any residual*. However, even if there were a residual, none of the $4 million Settlement Fund would revert to Barbara's Bakery. In the unlikely event any amounts remain in the Settlement Fund after cash payments to Class Members filing claims, notice and administration costs, incentive awards, and attorneys' fees and expenses, they would be distributed pursuant to the *cy pres* doctrine.[8] The *cy pres* funds, if any, will be distributed equally, subject to Court approval and consistent with Ninth Circuit precedent, to Consumers Union and Action for Healthy Kids. Settlement Agmt., §IV.D.2 (Dkt. 37).

*Cy pres* distributions are appropriate where proof of individual claims is burdensome or distribution of damages costly or where there are unclaimed funds. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). "A *cy pres* award must be 'guided by (1) the

---

[8]    As of September 27, 2013, the Settlement Administrator has received 33,199 claims. Wheatman Decl. ¶ 52.  The Claim Period is set to remain open until January 1, 2014 (180 days after commencement of Notice). Claims submitted to the Settlement Administrator are still subject to audit. *See, e.g.* Settlement Agmt. §V.A.14. Nonetheless, in light of the number of claims so far and the parameters of claim amounts available to class members (up to a maximum of $100), it is unlikely that any residual funds to be distributed to *cy pres* recipients.

objectives of the underlying statute(s) and (2) the interests of the silent class members,' . . . and must not benefit a group 'too remote from the plaintiff class.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Six Mexican Workers*, 904 F.2d at 1308-09); *see also Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). In other words, a *cy pres* remedy "must account for the nature of plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachshin*, 663 F.3d at 1036.

The proposed *cy pres* recipients, Consumers Union[9] and Action for Healthy Kids,[10] readily meet this requirement. The *cy pres* recipients will use the excess funds, if any, to further their organizations' goals of protecting consumers from false advertising and promoting consumer protection. The goals provide the "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin*, 663 F.3d at 1038. Educating consumers misled by false advertising further fulfills a primary function of state consumer protections laws. *See Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992) ("the power to prevent the use or

---

[9]     The work of Consumers Union, fighting for accurate labeling and to educate and protect consumers in the marketplace, is directly related to the objectives of the statutes invoked by Plaintiff in this action and anticipated to directly benefit the proposed Class. Odabashian Decl., ¶2 (Dkt. 36-4). The nonprofit organization would use any Settlement Funds to support its mission of protecting consumers from false advertising, as well as meeting the national demand by universities, academic societies and the media for fact-based research, surveys, expert testimony, talks, and panel participation on genetically engineered food. *Id.* at ¶9. *See* Plaintiff's Motion for Preliminary Approval of Class Action Settlement, 5:13-18 and 12:1-7 (Dkt. 36).

[10]     The work of Action for Healthy Kids to educate school leaders, public health officials, parents, and students about nutrition, food labeling, and healthy eating habits is directly related to the objectives of the statutes Plaintiff invokes in this action and benefits the proposed Class. Plaintiff alleges that because of the alleged false advertising concerning the ingredients in the Eligible Products, Plaintiff and the putative class were unable to make informed decisions about the food they were purchasing and consuming. Action for Healthy Kids is a national charity that focuses on educating people, including children and their parents, about nutrition and food labeling so that they can make informed decisions about what food to purchase and consume.  Because the primary consumers and purchasers of the Eligible Products, which are mostly cereals and snack foods, are children and their parents, charities dedicated to educating children and their parents about nutrition are especially important to the proposed Class. The education work conducted by Action for Healthy Kids will prevent parents and children falling prey to false advertising in the food industry. Haley Decl., ¶¶ 2-12 (Dkt. 36-5). *See* Plaintiff's Motion for Preliminary Approval of Class Action Settlement, 5:19-24 and 12:8-21 (Dkt. 36).

12-CV-02664-CRB: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

employment of false advertising and unfair business practices [through the UCL] necessarily includes the power to correct false impressions built up by prior advertising, and the power to deter future violations"). Moreover, both organizations work to effectuate nationwide results, thus matching the geographic scope of the nationwide Class. *Dennis*, 697 F.3d at 866.

### C. Non-Monetary Relief to Class Members

#### 1. Agreement to Modify Product Labeling and Advertising

In addition to the Settlement Fund, the Settlement puts an end to Barbara's Bakery's alleged deceptive advertising. The Settlement requires Barbara's Bakery to modify the labeling and all advertising of the Eligible Products to exclude claims that the Eligible Products are "all natural" and that they include "no artificial additives," "no artificial preservatives," or "no artificial flavors." Settlement Agmt., §§IV.E.1. - IV.E.4 (Dkt. 37). The Settlement Agreement also prohibits Barbara's Bakery from including similar representations on any other products that it may produce containing GMOs or artificial or synthetic ingredients. *Id.* at §IV.E.1. Finally, Barbara's Bakery will not be permitted to represent that any of its products are free of GMO ingredients, or include the Non-GMO Project Seal on particular product labels, unless it complies with the Non-GMO Project's Product Verification Program with respect to those products. *Id.* The required modifications must take place no later than three months after the Final Settlement Date or March 1, 2014, whichever is later. *Id.* However, Barbara's Bakery has already commenced implementing these modifications, such as amending their website and commencing the relabeling of products. Ahdoot Decl., ¶ 19. In addition, these modifications must remain in place for at least 3 years after the Final Settlement Date. Settlement Agmt., § IV.E.4 (Dkt. 37).

#### 2. Agreement to Eliminate GMO Ingredients from Certain Eligible Products

The Settlement Agreement includes additional relief under which Barbara's Bakery agrees to use reasonable efforts to eliminate the use of GMO ingredients in most of the currently sold Eligible Products and, furthermore, to participate in the Non-GMO Project's Product Verification Program with respect to these products. *Id.* at §§IV.F. This will require Barbara's Bakery to comply with a process-based program designed to assess compliance with the Non-GMO Project Standard,

which is incorporated into the Settlement Agreement as Exhibit No. 10. *Id.* Barbara's Bakery already has brought a significant number of products into compliance. *See, e.g.* Settlement Agmt., §IV.F.1 (Dkt. 37). This is a substantial benefit to the Class. Consumers who choose to avoid foods containing GMO and were allegedly deceived by Defendant's "all natural" labeling into thinking that the Eligible Products did not contain GMOs will now have the option of purchasing Eligible Products that meet the Non-GMO Project's strict standards.

### 3. The Value of Non-Monetary Consideration Is at Least $3.5 Million — the Cost to Barbara's Bakery

The non-monetary components of the Settlement, including the changes to Barbara's Bakery's labeling practices, manufacturing processes, and its participation in the Non-GMO Project, will cost Barbara's Bakery approximately $1.1 million to implement and are predicted to cost approximately $1.2 million per year going forward. No part of these costs, however, will be paid out of the Settlement Fund. (Rey Decl. ¶3.) The value of this non-monetary relief, over the next 3 years, is at least $3.5 million.

### D. Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiff Incentive Award

As is typical in common fund settlements, the Settlement Fund will be applied to pay: (i) the notice and claim administration costs; (ii) any attorneys' fees and expenses awarded by this Court; (iii) any incentive award granted to the Plaintiff; and (iv) cash payments to Class Members.

These costs are readily ascertainable. Based on favorable pricing negotiated by Class Counsel, the total cost of class notice and settlement administration to date is $732,792.91 (this expense is estimated to be $786,350, and in no circumstance will exceed $875,000). Wheatman Decl., ¶ 53; Ahdoot Decl., ¶ 15. Further, Plaintiff requests, and Barbara's Bakery has agreed not to oppose, a Court-awarded incentive award to Plaintiff of up to $2,500. Additionally, Class Counsel seeks attorneys' fees and reimbursement for expenses in the total amount of $1,000,000, which equals 25% of the Settlement Fund (or 13.3% of the total value of the Settlement).

## IV. THE CLASS NOTICE PROGRAM AND ITS RESULTS.

The Parties developed a notice program with the help of Kinsella Media, LLC ("KM"), a

firm that specializes in developing, design, and implementation of class action notice plans. Wheatman Decl., ¶1. The notice program (detailed in the Declaration of Shannon Wheatman, Ph.D. In Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Wheatman Prelim. App. Decl."), ¶¶14-37 and exhibits thereto (Dkt. 36-2)) was preliminarily approved by the Court. Preliminary Approval Order at ¶¶9-10. Class Notice was designed to provide broad notice intended to reach as many Class Members as reasonably possible and satisfied due process requirements. Wheatman Decl., ¶¶ 9-14.

The notice program was implemented in accordance with the terms approved by the Court. *Id.* at ¶¶ 11-51. On July 5, 2013 the settlement website (www.BarbarasBakerySettlement.com) went live. *Id.* at ¶ 35. Immediately following the establishment of the website, direct notice was provided to known Class Member via email of the Summary Notice. *Id.* at ¶ 16-19.

The notice program approved by the Court also included a robust Publication Notice program that focused on publishing Notice in targeted periodicals. Publication Notice was designed to provide Class Members with plain language information regarding the Settlement and to inform them about their rights. *Id.* at ¶ 20-32. It included a general description of the lawsuit, the Settlement relief, instructions on how to file a claim, and a general description of Class Members' legal rights. *Id.* at Exh. 2. For more information, the Publication Notice directed Settlement Class Members to the Settlement website or, in the alternative, to a toll-free number they could call for information, and also advised them that they could submit a Claim Form by mail or on-line. *Id.*

Publication Notice appeared in various sources chosen based on market research on the demographics of consumers who purchased the Eligible Products. Wheatman Prelim. App. Decl., ¶¶ 19-25 (Dkt. 36-2). Publication Notice appeared in four nationwide consumer publications chosen because they matched the demographics of the Settlement Class and which have a combined circulation of 23,475,000. *Id.* ¶¶ 23-25; Wheatman Decl., ¶¶ 23.

The Settlement was also publicized through the use of Internet "banner ads." Wheatman Decl., ¶¶ 24-27 and Exh. 3; Wheatman Prelim. App. Decl., ¶¶ 25 (Dkt. 36-2). Banner ads are short, Internet-based advertisements designed to attract attention. Wheatman Decl., ¶ 26. When presented with such an ad, an interested Internet user need only click on the banner ad to be taken directly to

the Settlement website. *Id.* Internet banner ads appeared on the following online networks and websites: 24/7 Real Media Network, Facebook.com, Microsoft Media Network, Specific Media, and Yahoo! Network. These networks are national media networks that allow banner advertisement impressions to be seen on websites like Goodhousekeeping.com, FoxSports.com, BleacherReport.com, Imdb.com, sports.yahoo.com, among many others, from August 1, 2013 to August 31, 2013. *Id.* at ¶¶ 24-25. The banner advertisement campaign is complete and delivered over 183 million impressions, or opportunities for potential Settlement Class Members to click on the banner advertisements and view the Settlement Website. *Id.* at ¶ 27. The Publication Notice and Internet banner media were carefully selected by the Settlement Administrator to reach potential Class Members. Wheatman Prelim. App. Decl., ¶¶ 18-26 (Dkt. 36-2).

The Settlement was also publicized through a press release distributed over PR Newswire's Full National Circuit, reaching approximately 5,000 media outlets and 5,400 websites. Wheatman Decl., ¶¶ 33-34.

The address of the website dedicated to the Settlement appeared on all of the notice pieces, and is hyper-linked where a notice piece appears on the Internet. *Id.* at ¶ 37. The Settlement website provides detailed information about the Settlement, as well as a copy of the Publication Notice, Long-form Class Notice, summary of important dates, a copy of the Settlement Agreement with Exhibits, the Complaint, and the Preliminary Approval Order. *Id.* at ¶ 38. The website allows Class Members to complete and submit a Claim Form online or to download a copy of the Claim Form for mailing to the Settlement Administrator. *Id.* at ¶ 41 and Exh. 6 (Claim Form). In addition, Class Members are advised of their legal rights, including, for example, how to opt-out or object to the Settlement. *Id.* at ¶ 42. The website, including the online Claim Form, was operational as of July 5, 2013. *Id.* at ¶ 43.

Complementing the Publication Notice and Summary Notice is the Long-form Class Notice. *Id.* at Exh. 5. The Class Notice contains detailed information about the lawsuit, the Settlement benefits, the release and how to opt-out, object and exercise other rights under the Settlement. *Id.* The Class Notice is available on the Settlement Website and by request to the Class Action Settlement Administrator. *Id.* at ¶¶ 39-40.

In addition, On July 5, 2013, a toll-free phone number was established, allowing Class Members to call and request that a Notice be mailed to them or listen to frequently asked questions. As of September 27, 2013, there have been 799 calls to the toll free number. *Id.* at ¶ 44.

The details of the Class Notice Program, including the methodology underlying its design, were explained in detail in the Wheatman Preliminary Approval Decl. (Dkt. 36-2). Use of the Internet and traditional methods for publication maximized the effect of the dollars spent to contact the Class. Publication through the Internet had the further advantage of immediately linking the reader to the Settlement Website and the Claim Form.

The data reflect the success of the notice program: As of September 27, 2013, 33,199 Class Members have submitted a Claim. *Id.* at ¶ 52.

## V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

The proposed Settlement is fair, reasonable, and adequate and reflects careful consideration by both Parties of the benefits, burdens, and risks associated with continued litigation of this action. Accordingly, the Parties respectfully submit that this Court should grant final approval of their Stipulation of Settlement and order that relief be given to the Class.

Pursuant to Rule 23(e), after directing notice to all class members in a reasonable manner and prior to granting final approval of a proposed settlement, the court must conduct a fairness hearing and determine whether the settlement terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456 (1983); *see generally, Manual for Complex Litigation (Fourth)* §21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions* §11:41. Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length and size of the litigation. *Id.*; *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d

943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . ."). Further, a decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mengo Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

Several non-exhaustive factors are universally recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625. The court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, *35 (N.D. Cal. Apr. 22, 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."). Each of these relevant factors fully supports approval of this Settlement.

**A.      The Settlement Was Reached After Serious, Informed, and Non-Collusive Arms-Length Negotiations and Mediation**

The settlement was reached after arms-length negotiations and was guided by the wisdom of an experienced and impartial mediator.  Settlements that are the product of such negotiations are considered presumptively fair and reasonable. *Id.*; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("[T]he fact that the settlement agreement was  reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair.") (*quoting Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (alterations in

original)).

Here, Counsel for Defendant and Plaintiff conducted diligent and often spirited negotiations to reach this Settlement. Ultimately, the parties agreed upon a traditional common fund settlement, after two separate mediations with the Honorable Eugene F. Lynch of JAMS in San Francisco, California on November 28, 2012 and January 11, 2013. Ahdoot Decl., ¶ 14. Although the Parties did not reach a final resolution at these mediations, they were able to agree on the principal deal points in the second mediation. *Id.* The Parties then launched into the process of negotiating the language and numerous details of the Settlement Agreement. For approximately three and a half months following the last formal mediation session, the Parties negotiated over details of the Settlement, including significant sticking points with respect to the amount of relief an individual claimant could receive, the Notice Program, the scope of the non-monetary terms of the settlement, the scope of the release, and the proposed *cy pres* recipients, among a host of other issues. *Id.* at ¶ 15. The settlement process was kept moving by the Court's scheduled conferences and deadlines. *See e.g.*, Dkt. Nos. 26, 31, and *Clerk's Notice* (filed April 25, 2013).

These facts, along with the involvement of an extremely knowledgeable and experienced mediator (Judge Eugene F. Lynch (Ret.)), demonstrate the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07–4480–SVW (FFMx), 2010 U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

The substantial involvement and assistance of a highly qualified mediator, the nature of the subsequent negotiations between the Parties, and the experience of Class Counsel and Defendant's Counsel as longstanding class action attorneys, are all illustrative of the arms-length negotiation that led to the Settlement. Accordingly, final approval of the Stipulation of Settlement is warranted.

## B. The Risk, Complexity, Expense, and Duration of Continuous Litigation Favor Final Approval

Settlements resolve inherent uncertainty on the merits of litigation, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *Officers for Justice*, 688 F.2d at 625. Assuming litigation were to proceed, the hurdles Plaintiff faced prior to certification and trial are substantial. Although Plaintiff is confident of his deceptive advertising claims against Barbara's Bakery, Plaintiff must balance the perceived strength of the Class claims against the undeniable risks of continuing litigation. Class certification itself always poses a significant risk.

Absent settlement, Barbara's Bakery would undoubtedly mount a strong opposition to the certification of any proposed class, and certification may require a "battle of the experts" on issues such as materiality of the allegedly false messages. If a class was certified, the risk of decertification would exist. *See, e.g. In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011).

Further, if the case proceeded to the merits Barbara's Bakery would of course argue that its claims on the product labeling are not deceptive or misleading. Plaintiff would argue otherwise resulting in another battle of the experts on the legitimacy of the claims challenged by this case. In addition, Plaintiff would be required to prove both his theory and calculations of recoverable damages with the help of expert testimony.

Defendant also would likely argue that its advertising constituted mere puffery. *See Edmunson v. P&G*, No. 10-CV-2256-IEG (NLS) 2011 U.S. Dist. LEXIS 102561, *4-8 (S.D. Cal. Sep. 8, 2011) (finding as a matter of law razor manufacturer's advertisements about closeness and comfort of blade to be mere puffery).

Barbara's Bakery has denied and continues to deny all of the claims and contentions alleged by Plaintiff. Litigating this class action through trial would be time-consuming and expensive with an uncertain result. The questions of whether Barbara's Bakery has sufficient substantiation for its challenged claims, and the amount of any damages, would require analysis by experts for both Parties. In this type of case, the Parties typically utilize marketing, consumer behavior, and

damages experts in addition to any scientific experts engaged. At trial, yet another battle of the experts would ensue on these issues.

Even if Plaintiff overcomes all obstacles and obtains a judgment for the Class, the recovery might be of no greater value to Class Members, and indeed might be substantially less valuable, than the proposed settlement. Moreover, Barbara's Bakery would likely appeal. Thus, even in the best case, it could take years to get relief for Class Members. There is a significant advantage of receiving a benefit now as opposed to later. *See Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming. The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). The Settlement here provides Class Members with significant benefits without the risk and delay of continued litigation, trial and appeal. In contrast, the measure of damages or restitution, either complete refunds or the difference in the price of the Eligible Products as advertised versus as received, would not be known until after the evidence was presented at trial. The challenge of proving damages could result in a very small recovery.

At minimum, absent settlement, this Action would likely continue for years before Plaintiff or the Class would see any recovery. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See id.*; *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, including the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class and favors final approval.

**C.    The Substantial Relief Provided by the Settlement Favors Final Approval**

The Settlement provides real relief to the Class. It provides Class Members with a significant refund of the full price of the Eligible Products for all purchases during the Class Period up to $100 — recovery that could exceed the amount a Claimant would receive if the case were tried (as Defendant would argue that Class Members were not damaged because they received the product paid for). Class Members' ability to recoup funds spent on the Eligible Products is not limited by or dependent on their ability to provide proof of purchase. And, none of this value reverts to Barbara's Bakery; in one way or another, the entire Settlement inures to the benefit of the Class. The substantial relief afforded by the Settlement weighs in favor of final approval.

The Settlement specifically addresses the alleged deceptive practices and provides carefully tailored economic benefits to all Class Members who submit valid claims. Class Members can claim a refund for the Eligible Purchases depending on the amount of their purchases during the Class Period. Settlement Agmt., § IV.B. (Dkt. 37). The potential cash payment to represents the approximate full purchase price of the Eligible Products.[11] This alone makes it an exceptional recovery because in false advertising cases the restitutionary relief available if the case were to proceed to trial may be limited to the difference in value of the product as advertised compared to the value of the product received. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") (citation omitted).

In addition, finely tailored non-monetary relief remedies the very alleged wrongful conduct at issue: false advertising. Further, the agreement to switch to non-GMO ingredients is ***more*** than Class Counsel could have achieved through trial.

In evaluating this factor, courts should not substitute their own judgment for the negotiated

---

[11]    For example, based on the number of claims to date, Class Members' recovery would range from approximately $77.89 for those who declared that they spent $100 or more (maximum possible compensation $100) to approximately $3.89 for those who declared that they spent $10 or less (maximum possible compensation $5) (assuming deductions for notice and administration costs at $786,350, incentive award at $2,500, and attorneys' fees and costs at $1,000,000). Ahdoot Decl., ¶¶ 21-22.

resolution of the parties. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965.

The Settlement provides substantial benefit to the Class, especially when compared with the risks of further litigation. This factor weighs in favor of approving the Settlement.

**D.    The Extent of Discovery and Stage of the Proceedings Favors Approval**

When litigation has proceeded to the point where the parties have a "clear view of the strengths and weaknesses of their cases," this factor supports approval of a settlement. *Chun-Hoon*, 716 F. Supp. 2d at 852; *Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, *12 (N.D. Cal. Mar. 28, 2007) (citation omitted). Class Counsel independently began investigating the alleged deceptive advertising for months before filing this action. Ahdoot Decl., ¶¶ 3-4. Class Counsel reviewed and analyzed Defendant's advertising and labeling, retained a consulting expert who assisted in understanding the scientific issues and in evaluating the veracity of Defendant's advertising claims, and conducted an independent investigation of the scientific and factual basis for the advertising of Defendant's products. *Id.* Class Counsel also conducted extensive discovery in the litigation. In total, Plaintiff obtained and reviewed over thirty (30) banker's boxes of documents and approximately seventy (70) Gigabytes (GB) of data through discovery, which concerned: (i) label design and product formulation; (ii) marketing, advertising, media, and public relations; and (iii) financial information. *Id.* at ¶ 9. In addition, Class Counsel conducted interviews of primary Barbara's Bakery's corporate witnesses who have been involved with the Eligible Products to address the following subjects: (i) sales and marketing; (ii) labeling;

12-CV-02664-CRB: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(iii) finance; (iv) document collection and retention; and (v) Barbara's Bakery's efforts to eliminate GMO ingredients from its products. *Id.* at ¶ 10.

Equipped with this information, the Parties were able to make a clear assessment of their claims and the likelihood of success on the merits. The litigation had, without doubt reached the stage at which the Parties have a clear view of the strengths and weaknesses of their cases, prior to reaching compromise.

### E.    The Experience and Views of Counsel Favor Approval

Courts recognize that the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to considerable weight. *Churchill Village*, 361 F.3d at 576 (giving this factor significant consideration); *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008) ("[s]ignificant weight should be attributed to counse's belief that settlement is the best interest of those affected by the settlement."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). In this litigation, the experience and views of Class Counsel, who specialize in consumer fraud and false advertising class actions, strongly favors final approval.

Class Counsel are experienced class action litigators with a history of success in similar false advertising litigation. Ahdoot Decl., ¶¶ 40-54. Class Counsel worked diligently to secure the best possible result for the Class and Class Counsel's views and recommendations concerning the Settlement are the product of thorough analysis and consideration of the issues and risks of continued litigation.  Class Counsel believes the results achieved by the Settlement are eminently fair, adequate and reasonable. *Id.* at ¶ 23.

The Court should also consider the skill and competence of opposing counsel who negotiated the Settlement. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that Class Counsel faced "established and skillful defense lawyers"). A team of very experienced and talented attorneys represents Barbara's Bakery from the firm of Glynn & Finley, LLP, a firm skilled in class action defense. Clement L. Glynn, a very well known,

12-CV-02664-CRB: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

respected, and accomplished attorney with 40 years of experience, headed the Glynn & Finley team. *See, e.g.* www.glynnfinley.com/attorneys/clement-l-glynn (last visited September 30, 2013).

### F.     The Reaction of the Class Members Favors Final Approval

Courts have likewise recognized that a favorable reaction by class members to the proposed settlement strongly supports final approval. *See Chun-Hoon*, 716 F. Supp. 2d at 852 ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). Class members must be allowed the opportunity to review and object to both the preliminary notice of settlement and plaintiff's application for attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993-94 (9th Cir. 2010).

Though the opt out and objection deadline is not for another two weeks (October 14, 2013), the reaction of Class Members so far is overwhelmingly positive. As of September 27, 2013, only one Class Member has opted out of the Settlement and there have been no objections. *See* Wheatman Decl., ¶ 52. Further, as of September 27, 2013, there have been 33,199 claims made to the Settlement Fund. *Id.*

The response of the members of the class to date strongly supports certification. *See, e.g., Churchill Village, LLC*, 361 F.3d at 577 (affirming approval of a class action settlement where 45 objections were received out of 90,000 notices); *Galluci v. Boiron, Inc.*, No. 11-CV-2039, 2012 U.S. Dist. LEXIS 157039, at *19 (S.D. Cal. Oct. 31, 2012) ("The response of the Class to this action, the certification of a class, and the Settlement . . . strongly favors final approval of the Settlement. Out of the estimated millions who received Notice . . . only two class members submitted valid requests for exclusion. Moreover, only three Objections were filed."); *Garcia v. Gordon Trucking, Inc.*, No. 10-CV-0324, 2012 U.S. Dist. LEXIS 160052, at *14, 17, 19 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class electing to opt out weighed in favor of final approval and the adequacy of the amount offered in settlement); *Chun-Hoon*, 716 F. Supp. 2d at 852 (granting final approval where "[a] total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and twenty-nine (329) members"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). Any objections filed by the objection deadline will be addressed in Plaintiff's reply memorandum.

In sum, the Settlement is the product of mediated negotiations between the parties, fully informed of the relative strengths and weaknesses of their claims and defenses. The Settlement is fair, adequate and reasonable, and warrants final approval under Rule 23(e).

## VI.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Plaintiff requests certification of the following Settlement Class:

> All persons who, during the Class Period, purchased in the United States any of the Eligible Products. Excluded from the Class are: (a) Barbara's Bakery's board members or executive-level officers, including its attorneys; (b) persons who purchased the Eligible Products primarily for the purpose of resale; (c) retailers or re-sellers of the Eligible Products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the Class as provided in the Agreement; (f) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (g) the Court, the Court's immediate family, and Court staff.

Settlement Agmt., §II.11. (Dkt. 37). The term "Eligible Products" is defined by a specific list of Barbara's Bakery Products. *Id.* at §II.17.

The Ninth Circuit authorizes certification of a settlement class to resolve consumer protection lawsuits. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Id.* Where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")

Here, certification of the Settlement Class is appropriate for purposes of settlement because all of the requirements of Rule 23 are satisfied.

## A. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The Plaintiff submits that each of these requirements is easily satisfied here.

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Hanlon*, 150 F.3d at 1019. Here, the numerosity requirement is readily met because joinder of absent class members would be exceedingly difficult. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Barbara's Bakery is a nationwide manufacturer of foodstuffs, including the Eligible Products. At the very least, tens of thousands of purchases were made during the Class Period. Ahdoot Decl. ¶ 11; 4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions*, §3.3 (Where "the exact size of the class is unknown, but general knowledge and common sense indicates that it is large the numerosity requirement is satisfied."); *see also Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012) ("In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it."); *Mathias v. Smoking Everywhere, Inc.*, 2:09-cv-03434-GEB, 2011 U.S. Dist. LEXIS 121687, at *4 (E.D. Cal. Oct. 20, 2011) (finding numerosity was satisfied where the plaintiffs' "calculations support[ed] the inference that the class contains at least 600 individuals"). As reported above, 33,199 Class Members have submitted claims to the Settlement Administrator as of September 27, 2013. Accordingly, the numerosity requirement is met.

### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . Their claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores, Inc. v. Dukes*, ____ U.S. _____, 131 S. Ct. 2541, 2551 (2011). Still, "[t]he existence of shared legal issues with divergent factual predicates is

sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006) ("[T]his court has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'") (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). This is because the commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192, 2011 U.S. Dist. LEXIS 60608, *24 (N.D. Cal. June 7, 2011).

The commonality element is easily satisfied here because Barbara's Bakery has engaged in standardized conduct, including making identical statements to each Class Member on its product packaging, marketing materials, and website. *Zeisel*, 2011 U.S. Dist. LEXIS 60608, *1-4; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (C.D. Cal. 2011) (plaintiff's claims presented common, core issues of law and fact, including "whether General Mills communicated a representation . . . that YoPlus promoted digestive health" and "whether YoPlus does confer a digestive health benefit that ordinary yogurt does not").

Here, Class Members' claims necessarily involve common questions of law and fact. Plaintiff's allegations focus on a singular advertising claim appearing on all of the Product labels during the Class Period. Whether the claim was false or misleading presents a common, salient issue sufficient to satisfy the Rule 23(a) commonality requirement. *See Zeisel*, 2011 U.S. Dist. LEXIS 60608, *1-4, 24-25 (finding commonality requirement satisfied where alleged misrepresentations appeared on product packaging).

### 3. Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiff's claims are "reasonably co-extensive" with absent Class Members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the

class." *Id.* For example, in *Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330, 338 (N.D. Cal. 2010), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings."

Plaintiff is typical because he and the proposed Class assert the same claim and seek the same remedy arising from the same course of conduct — Barbara's Bakery uniform, allegedly deceptive marketing campaign. Plaintiff and Class Members were all exposed to the same alleged misrepresentations, suffered similar damages as a result of the alleged misrepresentation, and seek relief for the same alleged conduct. Plaintiff's claims are identical to those of the Class. Therefore, the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020. The adequacy requirement is met here. The interests of Plaintiff and Class Members are fully aligned and conflict free. Further, Class Counsel are qualified and experienced in conducting class action litigation. Ahdoot Decl., ¶¶ 40-54; *see also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) ("In evaluating the adequacy of attorneys representing the class, a court may examine the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself."). Class Counsel have thoroughly and efficiently identified and investigated the claims in this lawsuit and the facts that support those claims. *See generally* Ahdoot Decl. Class Counsel ably navigated this litigation to a highly favorable resolution for Class Members. Accordingly, the interests of the Class have been adequately protected.

### B. The Class Should Be Certified Under Federal Rule of Civil Procedure 23(b)(3)

Plaintiff seeks certification of a Class under Rule 23(b)(3). Certification under Rule 23(b)(3)

12-CV-02664-CRB: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986)). There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citations omitted) (alterations in original). The proposed Settlement Class meets each of these requirements.

### 1. Common Questions Predominate Over Individual Issues

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.* at 625. "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Wright & Miller, Fed. Prac. & Proc. § 1778 (3d ed.). The predominance requirement is satisfied here. Plaintiff alleges that Class Members are entitled to the same legal remedies based on the same alleged wrongdoing — exposure to the same misrepresentation. The central issues for each Class Member are (1) whether Barbara's Bakery had substantiation for its claim that its products were "All Natural" or free of artificial additives, flavors, or preservatives, and (2) whether that alleged misrepresentation was likely to deceive a reasonable consumer. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign, common issues predominate."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638-39 (S.D. Cal. 2011) (predominance established where all class members were exposed to the same alleged misrepresentations). These issues predominate

and are the "heart of the litigation" because they would be decided in every trial brought by individual Class Members and can be proven or disproven with the same evidence.

Under these circumstances, there is sufficient basis to find that common issues predominated under Rule 23(b)(3).

**2.     A Class Action is the Superior Method to Settle This Controversy**

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: "(A) the class members' interest in individually controlling separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Where "the alternative methods of resolution are individual claims for a small amount of consequential damages or . . . replacement," the superiority requirement is met. *Hanlon*, 150 F.3d at 1023.

Application of Rule 23(b)(3)'s superiority factors shows that a class action is the preferred procedure for this Settlement. The amount of damage to which an individual Class Member would be entitled is small. It is neither economically feasible, nor judicially efficient, for the numerous Class Members to pursue their claims against Barbara's Bakery on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). Under the circumstances presented here, a class action is clearly superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied.

# VII.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS

The notice provided to the Class was adequate and satisfies Rule 23 and all other due process requirements. Rule 23 requires that "the court . . . direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While actual notice is not

12-CV-02664-CRB: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

required, the notice must be reasonably calculated to apprise the Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen*, 417 U.S. at 173-74; *Mullane,* 339 U.S. at 315. The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490, at *21 (S.D. Cal. Dec. 15, 2011) (citation omitted).

In this circuit, it has long been the case that notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide absent class members with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The Class Notice disseminated in this action — collectively the long form Notice of Class Action Settlement and the Summary/Publication Notice — satisfied these content requirements. *See* Wheatman Decl., Exh. 2 (Publication Notice), Exh. 4 (Summary Notice), and Exh. 5 (long form notice). The Class Notice was written in simple, straightforward language and included: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Barbara's Bakery that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the name of Class Counsel and information regarding attorneys' fees and expenses, and Plaintiff's incentive awards; (7) the Settlement Hearing

date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll free number where additional information may be obtained. Wheatman Decl., Exh. 5. The Class Notice also informed Class Members that Plaintiff's final approval brief and request for attorneys' fees would be filed prior to the objection deadline.

Collectively, the Class Notice provided Class Members with sufficient information to make an informed and intelligent decision about the Settlement. It therefore satisfied the content requirements of Rule 23. *See also In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class.").

Additionally, dissemination of the Class Notice satisfied all due process requirements. The Eligible Products are small dollar, over-the-counter retail purchases, and there is no way to easily identify all individual Class Members. Because Barbara's Bakery does not sell the Products directly to consumers, Barbara's Bakery does not have mailing addresses or other contact information for most Class Members. Therefore, the Notice Program included direct notice for some members of the class, it also consisted of publishing the Notice in targeted sources that directed Class Members to various other methods of obtaining the Claim Form. Additionally, Class Notice is available on the Settlement Website and is provided to Class Members who request it via the toll-free number established for this Settlement. The notice plan provided under the Settlement apprised Class Members of the pendency of the action and their right to object or exclude themselves from the Settlement. This Court previously approved the form and manner of notice. Preliminary Approval Order (Dkt. 58). As detailed in the declaration of Shannon Wheatman, Ph.D., the Class Notice Program was executed as previously detailed. *See* Wheatman Decl., ¶¶ 9-51.

## VIII.  CLASS COUNSEL'S FEE AND EXPENSE APPLICATION SHOULD BE APPROVED

### A.    Fees and Expenses Totaling 25% of the Settlement Fund Are Reasonable

"[A]litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Rodriguez*

*v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (citation omitted). The Ninth Circuit approves "two separate methods for determining attorneys' fees," *i.e.*, the percentage and lodestar/multiplier methods. *Hanlon*, 150 F.3d at 1029. However, federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage of the recovery method. *Six (6) Mexican Workers*, 904 F.2d at 1311; *see also Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 942 (9th Cir. 2011)) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund *in lieu* of the often more time-consuming task of calculating the lodestar."). This method recognizes that the efforts of class counsel established the entire settlement, including non-monetary benefits, for the benefit of the entire class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir. 2007); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance."). The guiding principle is that attorneys' fees "be reasonable under the circumstances." *Rodriguez*, 688 F.3d at 653 (citation omitted).

In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered to be the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mexican Workers*, 904 F.2d at 1311; *Rodriguez v. D.M. Camp & Sons*, No.: 1:09-cv-00700 – AWI – JLT, 2013 U.S. Dist. LEXIS 69282, at *34 (E.D. Cal. May 15, 2013) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.").

Likewise, California state "[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier and the percentage of recovery method." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001); *see also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000) ("Percentage fees have traditionally been allowed in such common fund cases[.]"); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996) (recognizing that the percentage method is appropriate where "the amount was a 'certain or easily calculable sum of

money.'") (*citing Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 35 (1977)); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008). The key advantage of the percentage method is that it focuses on the benefit conferred on the class resulting from the efforts of counsel. *Lealao*, 82 Cal. App. 4th at 48 ("Courts agree that, because the percentage-of-the-benefit approach 'is result-oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach.) (citations omitted). In California state court cases percentages in the range of 25% of the value of the recovery are typical. *Glendale City Employees' Ass'n. v. Glendale*, 15 Cal. 3d 328, 341 n.19 (1975) (approving award of 25% of the recovery); *Sanders v. City of L.A.*, 3 Cal. 3d 252, 261 (1970) (approving award of 25%); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (noting fee award of 25%); *Steinberg v. Allstate Ins. Co.*, 226 Cal. App. 3d 216, 220 n.2 (1990) (affirming award of 20% of the common fund); *Parker v. Los Angeles*, 44 Cal. App. 3d 556, 567-68 (1974) (affirming award of 33%); *Chavez*, 162 Cal. App. 4th at 50 (affirming award of 21.8 %).

### B. Class Counsel Request 25% Of The Cash Settlement Fund Of $4 Million As Their Combined Fee And Expense Award

Class Counsel requests a combined fee and expense award of 25% of the cash Settlement Fund (or 13.3% of the minimum total settlement value) created by their efforts.

The cash amount of the Settlement Fund is $4 million, excluding the value of the injunctive relief. The requested fees and out-of-pocket expenses of $1 million amount to 25% of the Settlement Fund. The minimum value of the entire settlement is $7.5 million including the estimated value of the injunctive relief, and the requested fees and expenses of $1 million comprise 13.3% of that total value. Using either method of calculating the percentage, the requested fees and costs fall well within the range awarded in class action cases in California state and federal courts.

While 25% is the benchmark, district courts have granted and the Ninth Circuit has affirmed awards of attorneys' fees at or above a 30% fee. *See e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS

26544, at *10 (S.D. Cal. Mar. 30, 2009) (awarding 30% for first $10 million and 25% for additional $2 million settlement). The percentage may be adjusted below or above the benchmark "to account for any unusual circumstances," but reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Class Counsel's request for fees is fair and reasonable in light of the fact that "special circumstances" support an upward departure from the 25% benchmark. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.") (citation omitted). Class Counsel obtained significant direct cash payments - not vouchers or coupons - for all Class Members who submit a claim. In addition, Class Counsel ensured, by negotiating a comprehensive notice program, and painstakingly monitoring the administration of the notice program, that all of the Settlement fund will be distributed to the class members, as opposed to the potential *cy pres* recipients. Moreover, Class Counsel were able to obtain Barbara's Bakery's agreement to eliminate the use of GMO ingredients in most of the Eligible Products and submit such Products to the rigorous auditing of the Non-GMO Project. This unique benefit is invaluable to the class members and not one that they could obtain through litigation. Additionally, Class Counsel were able to deliver the impressive monetary and non-monetary benefits of the Settlement to the class expeditiously, without burdening the class with unnecessary protracted litigation and related costs. Finally, Class Counsel are basing their percentage request solely on the Settlement Fund (the $4 million cash portion of the Settlement), exclusive of the value of the non-monetary benefits that the Settlement provides to the class, including label changes, the switch to non-GMO ingredient sourcing, and non-GMO auditing (valued at least at an additional $3.5 million).

Therefore, the Court should award Class Counsel's reasonable request for costs and fees at 25% of the cash fund.

### C.     The Lodestar / Multiplier Crosscheck

The attorneys' fees and costs sought by Class Counsel are also justified when applying the lodestar/multiplier crosscheck. Courts may, but do not have to, apply the lodestar method as a

crosscheck to assess the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure.").

District courts within the Ninth Circuit have recognized that a lodestar crosscheck need not be performed where plaintiff's counsel achieves a significant result through an early settlement. *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 U.S. Dist. LEXIS 72250, at *3-4 (E.D. Cal. July 6, 2011). One reason is the recognized shortcoming of the lodestar method, mainly its failure to reward early settlement, thereby encouraging costly litigation. *Vizcaino*, 290 F.3d at 1050 n.5 (the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *Lealao*, 82 Cal. App. 4th at 48 (percentage of benefit method is result-oriented as opposed to the process-oriented lodestar approach). Here, the Court need not conduct a lodestar crosscheck to determine the reasonableness of a 25% fee award.

Nevertheless, under the two-step lodestar/multiplier crosscheck, trial courts first calculate the lodestar, consisting of "all the hours reasonably spent, including those relating solely to the fee," times reasonable hourly rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 581-82 (2013). This "lodestar" can be adjusted upward or downward based on reasonable factors. *Ketchum*, 24 Cal. 4th at 1138 ("[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider.") (emphasis in original); *see also Ctr. for Biological Diversity v. County of San Bernardino*, 195 Cal. App. 4th 866, 899 (2010).

The Court may adjust the lodestar figure "upward or downward" based on "a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029); *see also Hartless*, 273 F.R.D. at 642; *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009). Other factors courts consider include the contingency risk involved in prosecuting the action and obtaining fees (*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 583 (2004)), the delay in receiving fees (*id.*), the

promptness of resolution (*Lealao*, 82 Cal. App. 4th at 52, *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003)), and the "public service element, and motivation to represent consumers and enforce laws" (*State of California v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985)). When determining the multiplier, trial courts should consider all factors relevant to a given case. *Lealao*, 82 Cal. App. 4th at 40.

The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar service in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation). "Multipliers can range from 2 to 4, or even higher." *Wershba*, 91 Cal. App. 4th at 255. The court in *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061, at *8 (9th Cir. Aug. 29, 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award which equated to a 5.2 multiplier and collecting cases in support); *Buccellato v. AT&T Operations, Inc.*, No. 10-463, 2011 U.S. Dist. LEXIS 85699, at *5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3).

In this case, the lodestar of Class Counsel is $526,129.50 based on 887.4 hours of work as of September 27, 2013. Ahdoot Decl., ¶¶ 35-36. Plaintiff's expenses total to $13,281.43. *Id.* at ¶ 37.

Accordingly, the $1 million fee and expense award amounts to a 1.88 multiplier being applied.[12] Further, the award does not reflect the time and expenses that will necessarily be incurred to complete the final approval briefing (*i.e.* the filing of supplemental briefing due 7 days before the Fairness Hearing), prepare for and attend the final approval hearing, respond to any appeals, and continue overseeing the claim administration and payment process.

### 1. The Hourly Rates are Reasonable

Class Counsel is entitled to the hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *Ketchum*, 24 Cal. 4th at 1133. Typically, the court looks to prevailing market rates in the community in which the court sits. *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Payment at full market rates is essential to fulfill the goal of enticing well-qualified counsel to undertake difficult consumer interest litigation, such as this. *San Bernardino*, 155 Cal. App. 3d at 755. The background and experience of Class Counsel are set forth in the concurrently filed declaration of Robert Ahdoot. Ahdoot Decl., ¶¶ 40-54. Class Counsel each have excellent reputations as class action litigators, with specialized experience in false advertising and consumer class action law. Their hourly rates are well within or below the range of rates billed by comparable attorneys in this market and are the standard rates they charge to all of their clients. Ahdoot Decl., ¶¶ 35-36, and Exh. 3 (2012 National Law Journal Billing Survey); *see also* Adjusted Laffey Matrix (www.laffeymatrix.com/see.html) (last visited Sept. 30, 2013).[13]

Class Counsel's rates also compare very favorably with rates approved by other trial courts

---

[12] The 1.88 multiplier is calculated as follows: $1,000,000 (total fees and costs requested) less $13,281.43 (the costs) = $986,718.57 (total fees requested). Then, $986,718.57 (total fees requested) divided by $526,129.50 (total lodestar) = 1.875429091 (1.88).

[13] The Laffey Matrix is a schedule of standardized hourly rates originally applicable for attorneys in the Washington, D.C. area. *See* http://www.laffeymatrix.com/see.html (last visited Sept. 30, 2013); *see also*, *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983). It has been increasingly used by Courts as reference in its adjusted form. *See, e.g.*, *Kempf v. Barrett Bus. Servs.*, No. C-06-3161 SC, 2007 U.S. Dist. LEXIS 89447 (N.D. Cal. Nov. 20, 2007) (finding attorneys' requested fees reasonable when compared to rates in the Updated Matrix).

in class action litigation. *See Wren vs. RGIS Inventory Specialists,* 2011 U.S. Dist. LEXIS 38667 N.D. Cal. Apr. 1, 2011) (finding as reasonable $650 per hour for a 1993 graduate); *Californians for Disability Rights v. Cal. DOT*, 2010 U.D. Dist. LEXIS 141030 (N.D. Cal. Dec. 13, 2010) (finding as reasonable $570 per hour for a 2000 graduate, $350 per hour for a 2007 graduate, and $475 per hour for a 2005 graduate); *Suzuki v. Hitachi*, 2010 U.S. Dist. LEXIS 22908, 2010 WL 956896 *3 (N.D. Cal March 12, 2010) (finding as reasonable attorneys fees rate of $650 for partner services, $500 for associate service and $150 for paralegal services); *Shames v. Hertz Corp.,* No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *59-60 (S.D. Cal. Nov. 5, 2012) (finding hourly rates ranging from $675 per hour for partners to $150 for paralegals to be reasonable for the San Diego legal market); *Iorio v. Allianz Life Ins. Co. of N. America*, No. 05-CV-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, at *31-32 (S.D. Cal. March 3, 2011) (partner rates of $750 per hour; associate rates of $595 per hour; paralegal rates of $195 per hour were reasonable); *Negrete v. Fid. and Guar. Life Ins. Co.*, No. CV-05-6837- CAS-MANx (C.D. Cal. April 19, 2010) (final order and judgment); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. 07-2633, 2008 U.S. Dist. LEXIS 110460, at *11-13 (C.D. Cal. Sept. 22, 2008) (partner rates of $750 to $450 and associate rates of $425 to $275 were reasonable). *Lingenfelter v. Astrue*, No. SA CV-03-00264-VBK, 2009 U.S. Dist. LEXIS 87685, at *11 (C.D. Cal. Sep. 3, 2009) ($600 is "reasonable"); *Love v. Mail on Sunday*, No. CV-05-7798-ABC (PJWX), 2007 U.S. Dist. LEXIS 97061, at *25 (C.D. Cal. Sept. 7, 2007) (approving partner rates of $540-$690 and associate rates of $305-$485); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872, at *10 (Nov. 2, 2005) (noting hourly rates may run up to $1,000 per hour in Los Angeles, with $125 to $650 routine in California). Finally, Class Counsel has submitted a sworn declaration attesting to the 2012 hourly rates and total hours, experience, and detailed efforts of the attorneys who prosecuted this case. Ahdoot Decl. ¶¶ 35-54.

## 2. The Hours Expended Are Reasonable

The number of hours spent by Class Counsel is reasonable.[14] The 887.4 hours expended by Class Counsel represent efforts incurred in the litigation as detailed above and in the Declaration of Robert Ahdoot, filed concurrently herewith. When all of the efforts detailed in Section II of this Motion (above) are considered, a total 887.4 expended hours is reasonable. *Hartless*, 273 F.R.D. at 644 (holding 5000 hours spent on a case that settled prior to class certification with no appeals was reasonable).

## D. Plaintiff's Expenses Are Reasonable and Compensable

The reasonableness of the requested fee award is reinforced by the fact that it includes all out-of-pocket expenses incurred by Class Counsel to prosecute the Class claims. Both the Ninth Circuit and California state courts allow recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton*, 327 F.3d at 974; *Serrano III*, 20 Cal. 3d at 35; *Rider v. San Diego*, 11 Cal. App. 4th 1410, 1424 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on Class Actions*, §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Class Counsel's declaration attests to the expenses incurred in this litigation — in the aggregate, a moderate $13,281.43 was invested. Ahdoot Decl., ¶ 37. As detailed in the Declaration of Robert Ahdoot, filed concurrently herewith, Class Counsel incurred these costs for mediation

---

[14] Though Class Counsel's hours are based on contemporaneous time records, Counsel need only submit summaries of their hours incurred; submission of billing records are not required. *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez*, 162 Cal. App. 4th at 64 ("timesheets are not required of class counsel to support fee awards in class action cases."); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *POM Wonderful, LLC*, 2008 U.S. Dist. LEXIS 110460, at *11-13; *Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper). Nonetheless, Class Counsel time records are available to the Court for *In Camera* review.

fees, expert fees, filing fees, attorney service fees, overnight postage, travel and discovery (document management). These expenses do not include costs resulting from in-house computer research, photocopies, postage, or telephone charges. All of these expenses were reasonably and necessarily incurred, and are of the sort that would typically be billed to paying clients in the marketplace.

### E.    The Requested Incentive Award Is Reasonable

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958; Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303 (2006) (28% of class actions include incentive awards to class representatives). Such awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.,* No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002). The Ninth Circuit has recognized that incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Incentive awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff respectfully requests that the Court approve a modest service award of $2,500 for Plaintiff, Richard Trammell, in recognition of his contribution toward the successful prosecution of this case. Mr. Trammell assisted with the pre-filing investigation of this matter. Further, he reviewed relevant pleadings and kept in constant communication with counsel throughout the litigation. He was also willing to provide both deposition and trial testimony as needed. Mr. Trammell was always ready, willing and able to assist with the case in any way necessary and appropriate. Declaration of Richard Trammell In Support of Final Approval of Class Action Settlement and Incentive Award, ¶¶ 2-4, filed concurrently herewith. Barbara's Bakery does not oppose the payment of these service awards. Settlement Agmt., §IX.F (Dkt. 37). The requested

service award falls squarely in line with amounts awarded in comparable cases. *See, e.g. In re Mego Fin.*, 213 F.3d at 463 (approving $5,000 incentive awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the $7,500 payments requested here are justified."); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS, at *19 (C.D. Cal. July 27, 2010) (approving incentive awards of $5000); *Williams v. Costco Wholesale Corp.*, No. 02 CV 2003 IEG (AJB), 2010 U.S. Dist. LEXIS, at *19-20 (S.D. Cal. July 7, 2010) (approving a $5000 incentive award); *Van Vranken*, 901 F. Supp. at 300 (approving service award of $50,000).

## IX.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court confirm certification of the Settlement Class, grant final approval of the Settlement and approve the requested award of attorneys' fees and expenses and Plaintiff's service awards, and enter a Final Order Approving Class Action Settlement and a Final Judgment in substantially the same form as those previously filed as Exhibits 3 and 4, respectively, of the Settlement Agreement (Dkt. 37-3 and 37-4).

Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

Dated: September 30, 2013

/s/ Robert Ahdoot
Robert Ahdoot
Tina Wolfson
10850 Wilshire Blvd., Suite 370
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585

*Attorneys for Plaintiff,*
*Richard Trammell*